UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MEGAN MORYC,

Plaintiff,

v

MICHIGAN STATE POLICE, a Department of the State of Michigan; ~~JAMES F. GRADY II~~; ~~AIMEE BRIMACOMBE~~; LISA GEE-CRAM; DALE HINZ; ~~CAMERON HENKE~~; JASON NEMECEK; ~~MICHAEL DILLON~~; ~~ERIC DARLING~~; KANDYCE HERR; THOMAS DEASY; ~~MATTHEW WILLIAMS~~; NICOLE BOCK; ~~KEVIN SWEENEY~~; ~~ANDREW FIAS~~; RYAN MAKI; ~~MICHAEL STEPHENS~~; ~~CARISSA HORAN~~; BRIAN BUEGE; ~~ROBERT DAVIS~~; and ~~SCOTT ZIESMAN~~; officially and in their personal capacities,

Defendants.

No. 1:25-cv-1127

HON. ROBERT J. JONKER

MAG. PHILLIP J. GREEN

**MICHIGAN STATE POLICE'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

---

Elizabeth K. Abdnour (P78203)
Nicole Cote (P86815)
Mitchell D. Sickon (P82407)
ABDNOUR WEIKER LLP
Attorneys for Plaintiff
325 E. Grand River Ave., Suite 250
East Lansing, MI 48823
517.292.0067
liz@education-rights.com
nicole@education-rights.com

Ashley Ames Dylenski (P88208)
Attorney for Plaintiff
528 Virgina Ave, #2
Ann Arbor, MI 48103
347.844.0834
aadylenski@gmail.com

Mary A. Waddell (P70545)
Ryan Wier (P83886)
Shelley M. McCormick (P80311)
Assistant Attorneys General
Attorneys for Defendants
MI Dep't of Attorney General
State Operations Division
P.O. Box 30754
Lansing, MI 48909
517.335.7573
waddellm1@michigan.gov
wierr2@michigan.gov
mccormicks@michigan.gov

______________________________________/

NOW COMES Defendant, Michigan State Police, by and through its attorney, Assistant Attorney General Mary A. Waddell, and in Response to Plaintiff's Motion to Compel, states as follows:

1. Admitted.
2. Defendant denies as untrue.
3. Admitted.
4. Defendant denies as untrue.
5. Defendant denies as untrue noting that Defendant has agreed to provide materials subject to a protective order, which was just recently entered on September 1, 2026 (ECF 35).
6. Defendant denies as untrue noting that MSP stands ready to respond to properly tailored discovery requests that are proportional to the needs of this case.

Respectfully submitted,

*/s/ Mary A. Waddell*

Mary A. Waddell
Assistant Attorney General
Attorney for MSP Defendants
State Operations Division
P.O. Box 30754
Lansing, MI 48909
517.335-7573
waddellm1@michigan.gov
P70545

Dated: September 8, 2026

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MEGAN MORYC,

Plaintiff,

v

MICHIGAN STATE POLICE, a Department of the State of Michigan; ~~JAMES F. GRADY II~~; ~~AIMEE BRIMACOMBE~~; LISA GEE-CRAM; DALE HINZ; ~~CAMERON HENKE~~; JASON NEMECEK; ~~MICHAEL DILLON~~; ~~ERIC DARLING~~; KANDYCE HERR; THOMAS DEASY; ~~MATTHEW WILLIAMS~~; NICOLE BOCK; ~~KEVIN SWEENEY~~; ~~ANDREW FIAS~~; RYAN MAKI; ~~MICHAEL STEPHENS~~; ~~CARISSA HORAN~~; BRIAN BUEGE; ~~ROBERT DAVIS~~; and ~~SCOTT ZIESMAN~~; officially and in their personal capacities,

Defendants.

No. 1:25-cv-1127

HON. ROBERT J. JONKER

MAG. PHILLIP J. GREEN

**<u>BRIEF IN SUPPORT OF MICHIGAN STATE POLICE'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL</u>**

---

Elizabeth K. Abdnour (P78203)
Nicole Cote (P86815)
Mitchell D. Sickon (P82407)
ABDNOUR WEIKER LLP
Attorneys for Plaintiff
325 E. Grand River Ave., Suite 250
East Lansing, MI 48823
517.292.0067
liz@education-rights.com
nicole@education-rights.com

Ashley Ames Dylenski (P88208)
Attorney for Plaintiff
528 Virgina Ave, #2
Ann Arbor, MI 48103
347.844.0834
aadylenski@gmail.com

Mary A. Waddell (P70545)
Ryan Wier (P83886)
Shelley M. McCormick (P80311)
Assistant Attorneys General
Attorneys for Defendants
MI Dep't of Attorney General
State Operations Division
P.O. Box 30754
Lansing, MI 48909
517.335.7573
waddellm1@michigan.gov
wierr2@michigan.gov
mccormicks@michigan.gov

---/

## INTRODUCTION

Contrary to Plaintiff's characterization, the Michigan State Police ("MSP") has not refused to participate in discovery. Rather, MSP raised good-faith, specific objections to discovery requests that are facially overbroad, unduly burdensome, and disproportionate to the needs of this case.

Plaintiff served MSP with 15 interrogatories and 30 requests for production ("RFPs") on June 24, 2026. These requests are sweeping in scope, with many lacking any meaningful temporal, subject-matter, or custodial limitations.

Plaintiff's definitions compound the problem: "You" encompasses "anyone acting on your behalf, including but not limited to you, your agents, employees, attorneys, and accountants," and "Defendant" includes "Michigan State Police ('MSP') and all its present and former officers, directors, employees, agents, departments, or attorneys in their capacities as such, or any other person acting on any of this entity's behalf." (ECF 31-13, Page ID.814.) MSP is a large government agency with over 3,000 employees. Plaintiff's discovery requests as drafted would require agency-wide polling and impose costs exceeding $1 million, as documented by the estimate from MSP's e-discovery vendor, KLDiscovery. (Exhibit A.)

Plaintiff's discovery requests also disregard the Court's Opinion and Order which partially granted Defendants' Motions to Dismiss (ECF 21) and which dismissed three claims and twelve defendants, leaving five claims and nine defendants. Instead, Plaintiff continues to seek information about dismissed parties and dismissed claims.

MSP has demonstrated a willingness to cooperate. MSP met and conferred with Plaintiff's counsel on July 10, 2026, and August 6, 2026. At Plaintiff's counsel's request, MSP provided a preliminary list of objections on July 20, 2026—before its responses were due—so the parties could discuss MSP's concerns in advance. (Exhibit C). Additionally, attempting to comply with Plaintiff's discovery requests, MSP received a quote from its e-discovery vendor which estimated the cost of complying with Plaintiff's discovery requests as written between $1,077,497 and $3,819,643. (Exhibit A).

Notably, Plaintiff's own counsel has conceded the merit of certain of MSP's objections. In an August 22, 2026, email, Plaintiff's counsel acknowledged that Plaintiff's direction to "identify" materials to be produced in response to each RFP could be stricken and that certain search terms, specifically "MM" and "M M" in RFPs 18–21, "are likely too broad and vague." (Exhibit B.) These concessions undermine Plaintiff's characterization of MSP's objections as mere "boilerplate" and confirm that MSP's concerns are substantive and well founded. Despite these concessions, rather than revising its discovery requests to address the identified deficiencies, Plaintiff elected to proceed with a motion to compel.

Critically, MSP has already demonstrated its willingness to engage in meaningful discovery. In the related state case, *Megan Moryc v. Michigan State Police*, Eaton County Circuit Court Case No. 24-657-CD, where Plaintiff is represented by the same attorneys, MSP produced 9,797 pages of records. MSP has agreed to allow use of those records in this pending case. Additionally, in the state

case, Plaintiff took 15 depositions. Plaintiff herself has submitted twenty-two (22) FOIA requests to MSP, many of which were answered with additional, voluminous records. That is not inclusive of any FOIA requests that may have been submitted on Plaintiff's behalf. MSP also cooperated with Plaintiff in finalizing a protective order in this case, which was entered on September 1, 2026. (ECF 35.)

These are not the actions of a party that has "refused to meaningfully participate in discovery." Notwithstanding the significant materials that have already been produced to Plaintiff, MSP stands ready to respond to properly tailored discovery requests that are proportional to the needs of this case.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 37(a), a party may move for an order compelling discovery when an opposing party fails to respond or provides evasive or incomplete responses. Under Fed. R. Civ. P. 26(b)(1), parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering (1) the importance of the issues at stake in the action; (2) the amount in controversy; (3) the parties' relative access to relevant information; (4) the parties' resources; (5) the importance of the discovery in resolving the issues; and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1).

"The moving party bears the burden of demonstrating relevance." *White v. City of Cleveland,* 417 F. Supp. 3d 896, 902 (N.D. Ohio 2019) (internal citations

omitted). "If the movant makes this showing, then the burden shifts to the non-movant to show that to produce the information would be unduly burdensome." *Id.*

## ARGUMENT

### I. Plaintiff's Interrogatories and Requests to Produce are Overbroad, Unduly Burdensome, and Disproportionate to the Needs of this Case.

In 2015, Rule 26 of the Federal Rules of Civil Procedure was amended to require that all discovery be "proportional" in nature. The old rule permitted discovery of any information "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1) (2010). The new rule permits discovery only of information relevant to any party's claim or defense and proportional to the needs of the case considering (1) the importance of the issues at stake in the action; (2) the amount in controversy; (3) the parties' relative access to relevant information; (4) the parties' resources; (5) the importance of the discovery in resolving the issues; and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1).

This change ensures that the parties and courts share the "collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." Fed. R. Civ. P. 26(b) advisory committee's note to 2015 amendment. "The objective was hard to miss. It was 'to improve a system of civil litigation that "in many cases . . . has become too expensive, time-consuming, and contentious, inhibiting effective access to the courts."'" *Helena Agri-Enters., LLC v. Great Lakes Grain, LLC,* 988 F.3d 260, 273 (6th Cir. 2021) (quoting *United*

*States ex rel. Customs Fraud Investigations, LLC v. Victaulic Co.*, 839 F.3d 242, 258 (3d Cir. 2016)).

"Instead of facilitating costly and delay-inducing efforts to look under every stone in an e-discovery world populated by many stones, the new rule 'crystalizes the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality.'" *Id.* Quoting John G. Roberts, Jr., 2015 Year-End Report on the Federal Judiciary 6 (2015). By "emphasiz[ing] proportionality as the governing principle," the changes "tightened discovery deadlines and so shortened the opportunities for delay." *Victaulic Co.,* at 274; see also Neil M. Gorsuch, *A Republic, If You Can Keep It* (2019).

It is now "the power—and *duty*—of the district courts actively to manage discovery and to limit discovery that exceeds its proportional and proper bounds." *Id.* (quoting *Noble Roman's, Inc. v. Hattenhauer Distrib. Co.*, 314 F.R.D. 304, 306 (S.D. Ind. 2016); *In re State Farm Lloyds*, 520 S.W.3d 595, 614 (Tex. 2017) (the new rule sought "to chang[e] the existing mindset that relevance is enough, restoring proportionality as the collective responsibility of the parties and the court")). The trial court must limit discovery where the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues. Fed. R. Civ. P. 26(b)(1); see also Fed. R. Civ. P. 26(b)(2)(C)(iii).

Yet Plaintiff's brief continues to cite the pre-amendment standard, relying on cases such as *Surles ex rel. Johnson v. Greyhound Lines, Inc.* which were decided under the old rule. (ECF 31, Page ID.797.)

"Undue burden is to be assessed in a case-specific manner considering 'such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'" *In re: Modern Plastics Corp.*, 890 F.3d 244, 251 (6th Cir. 2018) (quoting *Am. Elec. Power Co., Inc. v. United States*, 191 F.R.D. 132, 136 (S.D. Ohio 1999)). "Courts must 'balance the need for discovery against the burden imposed on the person ordered to produce documents.'" *Cahoo v. SAS Inst. Inc.,* 377 F. Supp. 3d 769, 775 (E.D. Mich. 2019)(internal citations omitted).

### A. Plaintiff's Interrogatories are Overbroad, Unduly Burdensome, and Disproportionate to the Needs of this Case.

Many of Plaintiff's interrogatories seek "all" facts, "all" documents, or information about "every person" without meaningful limitation. Plaintiff's definition of "You" encompasses the entire Michigan State Police, including all agents, employees, attorneys, and accountants. When combined with requests for "all" information, this definition renders compliance effectively impossible. Interrogatories 1, 3, 5, 6, 7, 8, 9, 10, 13, 14, and 15 each seek broadly defined information without custodial or subject-matter limitations, requiring MSP to poll

or survey the entire agency, which is an obligation that neither the Federal Rules nor proportionality principles impose.

The temporal scope compounds the problem. Plaintiff's interrogatories seek information from "January 1, 2016 to the present"—a span exceeding ten years—even though the events at issue occurred over a far narrower timeframe. The Court's dismissal of three claims and twelve defendants further narrows the relevant scope, yet Plaintiff's requests fail to account for those narrowings. (ECF 31.)

MSP's objections are not boilerplate. They identify specific concerns for each request, including the need for agency-wide polling, the absence of custodial or temporal limits, and the disproportionate nature of the requests relative to the surviving claims. Plaintiff's counsel's correspondence and Plaintiff's own brief effectively concedes the overbreadth of certain requests, acknowledging that terms like "M M" and "MM" "might be overbroad." (Exhibit B) (ECF 31, PageID.806.)

Additionally, before serving any discovery, Plaintiff gave a detailed public media interview about the events underlying her claims. See WLNS 6 News Investigates, "Big Boys' Club": "I never wanted to cheat on my husband" (July 2025), available at https://www.wlns.com/6newsinvestigates/big-boys-club-i-never-wanted-to-cheat-on-my-husband/. This interview was published electronically and thereby made available to the entire MSP workforce, dramatically expanding the universe of employees who may now claim to have "knowledge of" the allegations in Plaintiff's Complaint. Because Plaintiff's discovery requests define "You" to include

all MSP agents, employees, and anyone acting on the agency's behalf, and because the interrogatories seek "all" facts and "every person" with knowledge, the widespread dissemination of Plaintiff's account through this media interview means that MSP would be forced to identify and canvass a vastly inflated pool of employees, potentially numbering in the thousands, who were exposed to Plaintiff's version of events not through any involvement in the underlying matters, but simply by reading a news article. This self-generated publicity compounds the overbreadth and burden of Plaintiff's already sweeping discovery requests and further demonstrates why reasonable custodial and subject-matter limitations are essential.

### B. Plaintiff's Requests to Produce are Overbroad, Unduly Burdensome, and Disproportionate to the Needs of this Case.

Many of Plaintiff's RFPs seek "all documents" or "all communications" without meaningful limitation. When measured against the six proportionality factors of Rule 26(b)(1), these requests fail on virtually every count.

First, the burden and expense of the proposed discovery vastly outweigh its likely benefit. MSP's e-discovery vendor, KLDiscovery, has estimated the cost of complying with Plaintiff's requests as written at between $1,077,497 and $3,819,643. (Exhibit A). That figure alone establishes Plaintiff's RFPs are not proportional, particularly when the requests extend well beyond the surviving claims and parties. The importance of the discovery in resolving the issues does not

justify costs of this magnitude when the requests are not tailored to the five remaining claims and nine remaining defendants.

Second, the parties' relative access to relevant information does not excuse Plaintiff's overbreadth. MSP has not refused to produce relevant, proportional discovery. The issue is that Plaintiff's requests, as drafted, demand far more than what is relevant by sweeping in agency-wide materials with no connection to the surviving claims. Further, MSP has previously produced voluminous records to Plaintiff and her attorneys. Specifically, MSP produced 9,797 pages of records in the related state case, *Megan Moryc v. Michigan State Police*, Eaton County Circuit Court Case No. 24-657-CD, where Plaintiff was represented by the same attorneys as in this pending litigation. MSP has agreed to allow the use of those records in this pending case subject to a protective order which has just recently been entered. (ECF 35). Additionally, in the state case, Plaintiff took 15 depositions. Plaintiff herself has submitted twenty-two (22) FOIA requests to MSP, many of which have been responded to and produced additional voluminous records. This is not a case where Plaintiff lacks access to information; indeed Plaintiff has been provided a significant amount of information by way of FOIA requests and prior litigation including voluminous record production from MSP and numerous depositions.

Third, the importance of the issues at stake, while significant in any employment dispute, does not entitle Plaintiff to boundless discovery. Proportionality requires that even important cases be litigated efficiently, and the scope of Plaintiff's requests bears no rational relationship to the claims that remain.

By way of example, RFP 30 seeks all settlement agreements and disciplinary records for *any* MSP employee who violated certain provisions of the MSP Code of Conduct. This is an agency-wide fishing expedition with no nexus to Plaintiff or her individual claims. This request treats the entire disciplinary history of a 3,000-employee agency as fair game, without any showing that such records are important to resolving the specific issues in this case.

RFPs 3 and 5 seek all documents "referring to" the Complaint or Answer and any communications regarding the matters alleged therein. These are effectively unlimited requests that would capture every internal communication mentioning this litigation across the entire agency, including communications among dismissed parties about dismissed claims which would run directly afoul of the Court's Order narrowing this case. (ECF 31.)

RFPs 10, 24, 25, and 26 seek confidential personnel records, Professional Standards Section investigation files, and Internal Affairs investigation files involving non-party employees. The burden of reviewing, redacting, and producing these sensitive records is substantial, and the requests lack the specificity needed to justify that burden. They implicate the privacy interests of individuals who are strangers to this litigation and whose records bear no demonstrated relevance to the surviving claims.

RFPs 15 and 16 seek complete personnel files for all initial disclosure witnesses and all named defendants. These requests sweep in years of personnel records wholly unrelated to the claims at issue. Personnel files contain medical

information, performance reviews, and other sensitive materials that have no bearing on Plaintiff's surviving claims, and their wholesale production is neither important to resolving the issues nor proportional to the needs of this case.

RFPs 18 and 19 seek communications to and from dismissed defendants Grady and Brimacombe. The Court has already dismissed these individuals from this action. (ECF 31.) Discovery about dismissed parties is no longer relevant to any surviving claim or defense, and compelling production of their communications would serve no purpose other than to impose additional cost and burden on MSP. This is precisely the type of disproportionate discovery that Rule 26(b)(1) prohibits.

RFPs 1, 2, 4, 6, 7, 8, 9, 11, 12, 13, 14, 17, 20, 21, 22, 23, 27, and 28, while varying in their specific demands, share common deficiencies: they lack meaningful custodial limitations, impose no temporal boundaries proportionate to the events at issue, and fail to account for the Court's dismissal of claims and parties. Collectively, they would require MSP to search across the entire agency for an indefinite period, generating costs and burdens that far exceed any conceivable benefit to resolving the five remaining claims.

In sum, Plaintiff's RFPs reflect a "kitchen sink" approach to discovery that the 2015 amendments to Rule 26 were specifically designed to curtail. Not a single proportionality factor weighs in favor of compelling compliance with these requests as written. Discovery should be confined to the five remaining claims and nine remaining defendants, with appropriate custodial, temporal, and subject-matter limitations.

Plaintiff suggests that MSP's budget renders its proportionality objections moot, arguing that because MSP is a government agency, it can afford whatever discovery costs Plaintiff imposes. This argument misapprehends the proportionality framework. The "parties' resources" factor under Rule 26(b)(1) is only one of six considerations, and it does not override the others. A responding party's ability to pay does not transform disproportionate discovery into proportionate discovery. The advisory committee's notes to the 2015 amendment make this clear: "[t]he court must apply the standards in an even-handed manner that will prevent use of discovery to wage a war of attrition or as a device to coerce a party, whether financially weak or affluent." *See* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment. Even if MSP had unlimited resources—which it does not, as a taxpayer-funded state agency—Plaintiff would still bear the obligation to serve properly tailored discovery. The estimated cost between $1,077,497 and $3,819,643 to comply with Plaintiff's requests as written represents a diversion of public funds that no proportionality analysis can justify, particularly when the requests extend far beyond the surviving claims and parties.

### C. Plaintiff's Interrogatories and Requests to Produce Seek Privileged and Confidential Information and Materials.

A party may not routinely discover attorney-work product that is matters "that are prepared in anticipation of litigation." Fed. R. Civ. P. 26(b)(3)(A); *see In re Antitrust Grand Jury*, 805 F.2d 155, 163 (6th Cir. 1986). "Opinion work product is any material reflecting the attorney's mental impressions,

opinions, conclusions, judgments or legal theories." *Antitrust Grand Jury*, 805 F.2d at 163; *see NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 154, (1975). It "cannot be disclosed simply on a showing of substantial need and inability to obtain the equivalent without undue hardship." *United States v. Brancatelli,* 740 F. Supp. 3d 677, 682–83 (N.D. Ohio 2024) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 401, (1981)). Rather, the party seeking it "must show extraordinary justification." *In re Sealed Case*, 676 F.2d 793, 810 (D.C. Cir. 1982). "Opinion work product . . . is [thus] virtually undiscoverable." *Dir., Off. of Thrift Supervision v. Vinson & Elkins, LLP*, 124 F.3d 1304, 1307 (D.C. Cir. 1997).

Here, through Interrogatories 11 and 12, Plaintiff seeks MSP's opinion work product which is virtually undiscoverable. Plaintiff specifically requested that MSP describe its internal discovery collection and review process including how it identified, collected, and reviewed documents responsive to Plaintiff's requests. This information is protected attorney opinion work product. It reflects counsel's mental impressions and litigation strategy regarding what materials are relevant, how to organize the review, and which custodians to prioritize. Plaintiff has not shown justification, let alone extraordinary justification, to justify that MSP disclose its opinion work product.

RFPs 23 and 29 implicate the deliberative process privilege, which protects predecisional government communications reflecting the deliberative process of agency decision-making. *See Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). Additionally, RFPs 10, 24-26, 29, and 30 seek

confidential personnel records, Professional Standards Section ("PSS") investigation files, and Internal Affairs investigation files involving non-party employees. These records implicate significant privacy interests of individuals who are not parties to this litigation. Production requires careful review and potential redaction to protect those interests, which compounds the burden of compliance.

### D. Plaintiff's Instruction to "Identify" Exceeds the Scope of Rule 34.

Plaintiff's RFPs do not merely request the production of documents. Each RFP instructs MSP to "identify and produce" documents. Plaintiff's definition of "identify" requires MSP to provide the document type, general subject matter, date, and author, addressee, or recipient for each responsive document. (ECF 31-1, PageID.813-814.) This instruction effectively converts each RFP into a compound interrogatory, requiring MSP to catalogue and describe each document in addition to producing it.

Fed. R. Civ. P. 34 authorizes requests for production of documents; it does not require a responding party to identify or describe documents in the manner Plaintiff demands. *See* Fed. R. Civ. P. 34(b)(2) (requiring the responding party to produce documents or state objections). The "identify" component of each of Plaintiff's RFPs is, in substance, an interrogatory. When combined with the 15 interrogatories Plaintiff has already served, the total effectively exceeds the Court's 25-interrogatory limit under Local Civil Rule 33.1 and Federal Rule of Civil Procedure 33(a)(1).

**E. MSP's Objections Were Stated with Specificity.**

Contrary to Plaintiff's characterization, MSP's objections identify specific grounds for each request. Plaintiff conflates length and repetition with "boilerplate." When the same deficiencies, i.e. overbreadth, lack of temporal limits, and the inclusion of dismissed parties, appears across multiple requests, the same objection naturally applies. That MSP raised consistent objections across similarly deficient requests does not make them boilerplate; it reflects that Plaintiff's requests share common drafting deficiencies.

Plaintiff relies heavily on *Waskul v. Washtenaw County Community Mental Health*, 569 F. Supp. 3d 626 (E.D. Mich. 2021). But *Waskul* is distinguishable on its facts and, if anything, supports MSP's position. The defendant's counsel in *Waskul* lacked a basic understanding of ESI discovery practices, the defendant refused to set any deadlines for producing ESI, unilaterally aborted agreed-upon search term testing, and offered boilerplate objections without any evidentiary support which the court found "legally meaningless" and tantamount to waiver. *Id.* at 635–40. That is not this case. MSP has actively engaged: it met and conferred with Plaintiff's counsel twice, provided a preliminary list of objections in advance of its formal responses, provided detailed written responses to each request, agreed to produce state court discovery subject to a protective order which was just recently agreed upon and entered (ECF 35), and consulted with an e-discovery vendor for a quote to comply with Plaintiff's requests.

MSP is not seeking to avoid discovery entirely, it is asking for reasonable tailoring. *Waskul* itself recognized that requests must be proportional and that

parties must cooperate on ESI protocols. The court did not hold that a party is entitled to unlimited, untailored discovery simply because it filed a motion to compel.

## CONCLUSION

For the foregoing reasons, Defendant, Michigan State Police, respectfully requests that the Court deny Plaintiff's Motion to Compel and award MSP such additional and further relief as the Court deems appropriate.

Respectfully submitted,

*/s/ Mary A. Waddell*
Mary A. Waddell
Assistant Attorney General
Attorney for MSP Defendants
State Operations Division
P.O. Box 30754
Lansing, MI 48909
517.335.7573
waddellm1@michigan.gov
P70545

Dated: September 8, 2026

**CERTIFICATE OF SERVICE**

I certify that on September 8, 2026, I electronically filed the foregoing papers with the Clerk of the Court using the ECF system, which will provide electronic copies to counsel of record, and I certify that my secretary has mailed by U.S. Postal Service the papers to any non-ECF participant.

/s/ *Mary A. Waddell*
Mary A. Waddell
Assistant Attorney General
Attorney for Defendant MSP
State Operations Division

2025-0444648-A