UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

MEGAN MORYC,

Plaintiff,

v

MICHIGAN STATE POLICE, a Department of the State of Michigan; ~~JAMES F. GRADY II~~; ~~AIMEE BRIMACOMBE~~; LISA GEE-CRAM; DALE HINZ; ~~CAMERON HENKE~~; JASON NEMECEK; ~~MICHAEL DILLON~~; ~~ERIC DARLING~~; KANDYCE HERR; THOMAS DEASY; ~~MATTHEW WILLIAMS~~; NICOLE BOCK; ~~KEVIN SWEENEY~~; ~~ANDREW FIAS~~; RYAN MAKI; ~~MICHAEL STEPHENS~~; ~~CARISSA HORAN~~; BRIAN BUEGE; ~~ROBERT DAVIS~~; and ~~SCOTT ZIESMAN~~; officially and in their personal capacities,

Defendants.

No. 1:25-cv-1127

HON. ROBERT J. JONKER

MAG. PHILLIP J. GREEN

---

Elizabeth K. Abdnour (P78203)
Nicole Cote (P86815)
Mitchell D. Sickon (P82407)
ABDNOUR WEIKER LLP
Attorneys for Plaintiff
325 E. Grand River Ave., Suite 250
East Lansing, MI 48823
517.292.0067
liz@education-rights.com
nicole@education-rights.com

Ashley Ames Dylenski (P88208)
Attorney for Plaintiff
528 Virgina Ave, #2
Ann Arbor, MI 48103
347.844.0834
aadylenski@gmail.com

Mary A. Waddell (P70545)
Ryan Wier (P83886)
Shelley M. McCormick (P80311)
Assistant Attorneys General
Audrey J. Forbush (P41744)
Special Assistant Attorney General
Attorneys for Defendants
MI Dep't of Attorney General
State Operations Division
P.O. Box 30754
Lansing, MI 48909
517.335.7573
waddellm1@michigan.gov
wierr2@michigan.gov
mccormicks@michigan.gov

---/

# BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS UNDER FED. R. CIV. P. 12(C)

## CONCISE STATEMENT OF ISSUES PRESENTED

1. Title VII requires a plaintiff to exhaust her administrative remedies before suing, limits its protections to "employees," and requires proof of an adverse employment action to state a discrimination claim. Here, Moryc's EEOC charge alleged only that MSP failed to "thoroughly investigate" her complaint of assault by her former domestic partner; Moryc was not an employee of MSP on March 16, 2024, the date of the alleged discrimination; and an employer's failure to investigate a complaint is not an adverse employment action under Title VII. Is MSP entitled to judgment on the pleadings on Moryc's Title VII discrimination claim?

2. Title VIIs anti-retaliation provision requires a plaintiff to exhaust each discrete retaliatory act within the 300-day charge period, to oppose an unlawful employment practice between an employer and its employee, to allege a materially adverse action, and to plead a causal connection between the protected activity and that action. Here, Moryc filed her EEOC charge on June 12, 2025; her April 2023 report was made when she was not an MSP employee; the circuit court has determined that MSP owes her nothing further under the arbitration award; state law bars MSP from returning an unlicensed trooper to duty; a party's litigation defenses are not materially adverse; and her 2020-2021 protected activity preceded the alleged adverse actions by more than three years. Is MSP entitled to judgment on the pleadings on Moryc's Title VII retaliation claim?

3. The Due Process Clause protects individuals from the State, not from each other, and imposes no duty to protect against private violence absent a special relationship or a state-created danger. Here, Moryc alleges abuse by her live-in partner, not a state actor; she alleges no custody or restraint by any Defendant, and the Court has already dismissed her state-created-danger theory; her workplace-harassment and field-training-officer theories accrued more than three years before she sued; and she was suspended or terminated throughout the period of the alleged abuse. Are the individual Defendants entitled to judgment on the pleadings on Moryc's substantive due process claim?

4. An equal protection claim requires factual allegations of intentional disparate treatment compared with similarly situated persons, and § 1983 liability requires each defendant's personal involvement. Here, Moryc's claim rests on a 2016 field-training-officer assignment and on a 2020 investigation and 2021 termination, all outside the three-year

limitations period; she identifies no comparator, no comparable conduct, and no decisionmaker; and she attributes every challenged decision collectively to "Defendants." Are the individual Defendants entitled to judgment on the pleadings on Moryc's equal protection claim?

5. A First Amendment retaliation claim requires that each defendant knew of the protected speech and took adverse action because of it. Here, Moryc's only alleged protected speech is her communications with a WLNS reporter beginning in August 2024, which were not published until July 7, 2025; she does not allege that any individual Defendant knew of those communications; and she attributes the challenged employment actions, several of which predate publication, to "MSP" or to "Defendants" collectively. Are the individual Defendants entitled to judgment on the pleadings on Moryc's First Amendment retaliation claim?

6. Qualified immunity shields government officials from damages unless the plaintiff shows a violation of a constitutional right that was clearly established such that every reasonable official would have understood the conduct to be unlawful. Here, Moryc has not alleged a constitutional violation, and she cannot identify precedent placing beyond debate that any individual Defendant's alleged conduct was unconstitutional. Are the individual Defendants entitled to qualified immunity?

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

Authority: Fed. R. Civ P. 12(C)
42 U.S.C. § 2000e
*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011)
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).
*McDonnell-Douglas Corp. v. Green,* 411 U.S. 792 (1973).
*Quigley v. Tuong Vinh Thai*, 707 F.3d 675 (6th Cir. 2013).

## INTRODUCTION

Moryc's complaint spans nearly a decade and turns nearly every workplace dispute she has had with MSP into a federal claim. It cannot survive a Rule 12(c) motion.

The pleadings themselves supply the reason. MSP terminated Moryc on August 9, 2021, and she was not reemployed until October 2, 2024. (ECF No. 5, PageID.217, 233-234.) Everything at the heart of her case falls within that gap: the conduct in her EEOC charge, the abuse she alleges, and her 2023 report. During that time, she was neither an MSP employee nor in the State's custody.

A non-employee cannot state a Title VII claim for discrimination or retaliation. She has no due process claim, because the Constitution does not oblige the State to protect her from a private partner. Her equal protection claim names no comparator, and her First Amendment claim names no defendant who knew of her speech. The timeline defeats her causation theories, the statute of limitations bars much of the rest, and qualified immunity protects the individual Defendants.

The Court should grant judgment on the pleadings.

## STATEMENT OF FACTS

In 2016, Moryc was hired as a State Trooper by the Michigan State Police. (ECF No. 5, PageID.206.) In October 2020, Moryc, while heavily intoxicated, assaulted three of her colleagues at an event for the Michigan State Police Troopers Association. *Mich. Dep't of State Police v. Mich. State Police Troopers Ass'n,* 349 Mich. App. 458, 461 (2023). Moryc was suspended with pay pending the investigation. (*Id.*, at 462.) She was later charged with two counts of assault and

battery and two counts of fourth-degree criminal sexual conduct. (*Id.*) Once criminally charged, Moryc was suspended without pay. (*Id.*)

As the result of a plea agreement, Moryc ultimately pled no-contest to two counts of assault and battery and was sentenced to thirty days in jail. (*Id.*) Consequently, on August 9, 2021, MSP terminated Moryc. (*Id.*) The MSPTA filed a grievance challenging the termination on Moryc's behalf and an arbitration hearing was subsequently held. (*Id.* at 463.) The arbitrator issued an award in February 2022, opining that although there was just cause for discipline, termination was too severe. (*Id.*) The arbitrator ordered Moryc reinstated with back pay. (*Id.*) MSP filed a complaint with the Ingham County Circuit Court seeking to vacate the award. (*Id.*, at 464.) MSPTA filed a counter-complaint seeking to confirm the award.

On September 19, 2022, the circuit court vacated the award. (*Id.*, at 466.) MSPTA filed an appeal with the Michigan Court of Appeals. (ECF No. 5, PageID.218.) In October 2022, Moryc's law enforcement license issued by the Michigan Commission on Law Enforcement Standards (MCOLES) lapsed. (Mich. Comp Laws 28.609) On December 28, 2023, the Michigan Court of Appeals reversed the circuit court's decision vacating the award. (ECF No. 5, PageID.218.) MSP filed an application for leave to appeal to the Michigan Supreme Court. (*Id.*) On September 18, 2024, the Michigan Supreme Court denied the application for leave to appeal. (*Id.*) On October 2, 2024, Moryc was reemployed by MSP but

placed on paid administrative leave for reasons that will be explained below. (ECF No. 5, PageID.233.)

*Moryc's history with Trevin Antcliff.*

In late 2016 or early 2017, while still a probationary trooper, Moryc (then married) began a sexual relationship with another married Trooper, Trevin Antcliff, while he was her field training officer. (ECF No. 5, PageID.216.) By the fall of 2018, Moryc and Antcliff were residing together as domestic partners. (*Id.*, PageID.216.) In March 2023—after her first termination and while the litigation discussed above was ongoing—Moryc and Antcliff ended their relationship. (*Id.* PageID.222.) On April 9, 2023, following a civil standby necessitated by the acrimonious breakup between Moryc and Antcliff, Moryc complained to an MSP Lieutenant that Antcliff was abusive. (*Id.* PageID.224.) Per MSP policy, both an internal and criminal investigation were commenced. (*Id.*)

MSP Detective Sergeant Kandyce Herr was assigned to conduct the criminal investigation into Moryc's allegation of assault by Antcliff. (*Id.*) After conducting interviews and compiling the materials provided by both Moryc and Antcliff, Sergeant Herr submitted her report to the Ionia County Prosecutor's Office. (*Id.*) Because Antcliff was a law enforcement officer working in Ionia County, the case was reassigned by the Department of Attorney General to the Barry County Prosecutor's office. (ECF No. 5, PageID.225.)

The Barry County Prosecutor's office declined to issue criminal charges against Antcliff. (*Id.*) With the criminal case complete, the internal investigation

resumed, and PSS Investigator Specialist Lieutenant Carissa Horan was assigned to conduct the internal investigation to determine whether Antcliff violated any MSP work rules. (*Id.*) Moryc was interviewed again as part of the internal investigation, this time by Specialist Lieutenant Ryan Tabaczka. (*Id.* at PageID.226.)

*The impetus for the perjury investigation.*

During the internal investigation, Lieutenant Horan conducted several interviews including one with Nina Antcliff, who was married to Trevin Antcliff when Moryc was a probationary Trooper. (ECF No. 5, PageID.227.) Nina reported that the extramarital relationship between her husband and Moryc led to her divorcing Antcliff Nina further reported that both Antcliff and Moryc committed perjury during the 2018 divorce trial by allegedly lying about when their physical relationship began. (ECF No. 5-5, PageID.312.)

*The perjury investigation begins.*

As with the assault allegations against Antcliff, and because perjury is a crime, Horan was required to refer the matter, which began with a criminal investigation into both Moryc and Antcliff. Sergeant Kailee Roskam (f/k/a Schuett) was assigned to conduct the criminal perjury investigation. (ECF No. 5, PageID.228.) The criminal perjury investigation was closed after the prosecutor declined to issue charges against either Moryc or Antcliff. (*Id.*, at PageID.230.)

On September 18, 2024, the Michigan Supreme Court denied MSP's application for leave relative to Moryc's first termination. (ECF No. 5, PageID.233.) As a result, Moryc was reemployed by MSP on or about October 2, 2024. (*Id.*)

*Internal perjury investigation into Moryc.*

Because Moryc was again an MSP employee, MSP was required to conduct an internal investigation into Moryc based on the perjury allegations, as it had done with Antcliff. Consequently, upon her reemployment, she was placed on paid administrative leave. (*Id*. PageID.234.) As a result of that internal investigation, the misconduct allegations against Moryc relating to perjury were sustained by MSP and termination was recommended. (ECF No. 5, PageID.239.)

Following a discipline conference on February 13, 2025, Moryc's termination recommendation was upheld. (*Id,* PageID.241.) Nevertheless, Moryc remained on paid administrative leave. (*Id.*) Moryc, through MSPTA, filed a grievance challenging the second termination decision. (*Id.*, PageID.241.) MSPTA and MSP subsequently engaged in arbitration, and the arbitrator reversed the termination decision on July 28, 2025. (ECF No. 5-5, PageID.305-329.) The arbitrator ordered that MSP reinstate Moryc subject to MCOLES licensure. (*Id.,* at PageID.329.)

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The standard of review for a judgment on the pleadings is the same as the standard for a motion to dismiss under Rule 12(b)(6). *Fritz v. Charter Twp of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). Therefore, to survive a Fed. R. Civ. P.

12(c) motion, a complaint must establish "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Further, "[t]he court may consider documents attached to the pleadings, documents that are referred to in the pleadings and [are] integral to the claims, and matters of public record without converting a motion for judgment on the pleadings to a motion for summary judgment." *Com. Money Ctr., Inc. v. Ill. Union Ins. Co.,* 508 F.3d 327, 335-36 (6th Cir. 2007). Importantly, "[w]hen an exhibit contradicts the complaint, the exhibit trumps the allegations." *Kaplan v. Univ. of Louisville,* 10 F.4th 569, 576 (6th Cir. 2021) (cleaned up). Applying that standard, "[j]udgment on the pleadings is proper when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Anders v. Cuevas*, 984 F.3d 1166, 1176 (2021) (cleaned up).

## ARGUMENT

### I. Moryc's Title VII sex-discrimination claim is deficient on the face of the pleadings.

#### A. Moryc's Title VII claim must be dismissed to the extent it rests on conduct outside the scope of her administrative charge.

A claimant must exhaust his or her administrative remedies before filing an employment discrimination complaint under Title VII in federal or state court. *Lockett v. Potter,* 259 F. App'x 784, 786 (6th Cir. 2008) The claimant exhausts administrative remedies "(1) by filing timely charges of employment discrimination with the EEOC, and (2) receiving and acting upon the EEOC's statutory notice of the right to sue." *Puckett v. Tenn. Eastman Co.*, 889 F.2d 1481, 1486 (6th Cir. 1989)

(citing 42 U.S.C. § 2000e-5(f)(1); *McDonnell-Douglas Corp. v. Green,* 411 U.S. 792, 798 (1973)).

Generally, for a charge to be timely filed under Title VII, the claimant generally must file it with the EEOC within 180 days of the last alleged discriminatory act. 42 U.S.C. § 2000e-5(e); see also *Logan v. MGM Grand Detroit Casino*, 939 F.3d 824, 827 (6th Cir. 2019) But this period increases to 300 days in "deferral jurisdictions"—i.e., jurisdictions where a State or local agency, known as a Fair Employment Practice Agency ("FEPA"), "enforces a law that prohibits employment discrimination on the same basis." *Jones v. Fed. Express Corp*., 952 F.3d 815, 817 (6th Cir. 2020). Michigan is a deferral state. See *Logan*, 939 F. 3d 828.

"The charge must be 'sufficiently precise to identify the parties, and to describe generally the action or practices complained of.' " *Kilpatrick v. HCA Hum. Res., LLC*, 838 F. App'x 142, 146 (6th Cir. 2020) (quoting *Younis v. Pinnacle Airlines, Inc*., 610 F.3d 359, 361 (6th Cir. 2010) (quoting 29 C.F.R. § 1601.12(b)). A plaintiff cannot assert a Title VII claim in court that she never raised in her charge. *See Younis,* 610 F.3d at 361.

Moryc's complaint sweeps far beyond what her administrative charge actually covered. Count I incorporates all 426 preceding paragraphs of allegations. (ECF No. 5, PageID.270, ¶ 427.) Based on that sprawling incorporation, she alleges that "by the acts and omissions alleged herein, MSP discriminated against Tpr. Moryc on the basis of sex in violation of Title VII by failing to investigate her

reports of sex discrimination, harassment, and abuse." (*Id.* ¶ 433.) She further alleges that she filed a charge with the Michigan Department of Civil Rights ("MDCR") regarding sex discrimination and that the EEOC issued a Notice of Right to Sue on Charge No. 23A-2024-00781/MDCR #643570, which alleged discrimination "covering a period of August 17, 2023 to March 16, 2024." (ECF No. 5, PageID.271.)

The charge was limited to a single incident on March 16, 2024. (Ex. A—MDCR Complaint.)[1] The narrow scope of that charge—a claim that MSP failed to adequately investigate her August 2023 sexual assault report—bears little resemblance to the 426 paragraphs of allegations Moryc has folded into Count I. To the extent she now attempts to base her Title VII claim on conduct outside the charged period or the charged subject matter, those allegations were never presented and cannot support the claim. She cannot rely on a charge limited to 2023–2024 conduct to import earlier, or otherwise uncharged, acts that were never submitted to the agency. Any portion of her complaint resting on such unexhausted allegations must therefore be dismissed.

### B. Moryc's Title VII discrimination claim independently fails because she was not MSP's employee during the relevant period.

Assuming Moryc properly exhausted the 2023–2024 allegation in her EEOC charge, her Title VII claim still fails because she was not employed by MSP at the time of the alleged discrimination. Count I asserts a sex-discrimination claim under

[1] Moryc's first Right to Sue is attached as Exhibit B.

Title VII, 42 U.S.C. § 2000e-2(a). (ECF No. 5, PageID.270.) That provision makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting 42 U.S.C. § 2000e-2(a)(1)).

Title VII's protections extend only to "employees." *Birch v. Cuyahoga Cnty. Prob. Court,* 392 F.3d 151, 157 (6th Cir. 2004). As one court in this Circuit has explained, being an "employee" of the defendant is a threshold requirement for a Title VII claim. *Savas v. William Beaumont Hosp.,* 216 F. Supp. 2d 660, 664 (E.D. Mich. 2002); *see also* 42 U.S.C. § 2000e(f) (defining "employee" for purposes of the statute). Moryc cannot meet that threshold here. The discrimination she alleges is said to have occurred between August 17, 2023 and March 16, 2024. (PageID.271.) But by her own admission, MSP terminated her employment on August 9, 2021, (ECF No. 5, PageID.217, PageID.238; ECF No. 5-1, PageID.290), and she was not reemployed until on or about October 2, 2024, (ECF No. 5, PageID.233–234; ECF No. 5-2, PageID.302). She therefore was not an MSP employee at any point during the period covered by her charge. Because she was not an employee when the alleged conduct occurred, her allegations cannot sustain a Title VII sex-discrimination claim, even accepted as true. *See Copeland v. Aerisyn, LLC*, No. 1:10-cv-78, 2011 U.S. Dist. LEXIS 65980, 2011 WL 2181624, at *3 n.3 (E.D. Tenn. May 13, 2011) (once discharged, the plaintiff "was no longer an employee of the

defendants, and therefore, any subsequent racial harassment" against him was not actionable under Title VII). The claim should be dismissed on this basis alone.

### C. MSP's alleged failure to investigate is not an adverse employment action.

Even setting aside the exhaustion and employee-status defects, Moryc's discrimination claim fails on the merits. To plead a sex-discrimination claim under Title VII, a plaintiff must plausibly allege that (1) she belongs to a protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) she was replaced by, or treated less favorably than, someone outside her protected class. *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 709 (6th Cir. 2006). An "adverse employment action" requires "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Bilyeu v. UT-Battelle, LLC*, 154 F.4th 396, 403 (6th Cir. 2025) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).

Moryc has not plausibly alleged such an action. She points to no change in her employment status during the relevant period—unsurprising, since she was not employed by MSP at the time. And even if she had been an employee, a failure to investigate a complaint is not an adverse employment action. *See Bryant v. Ally Fin.*, 2026 U.S. Dist. LEXIS 55563, at *13 (E.D. Mich. Jan. 7, 2026) (citing *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010)) (an employer's failure to investigate a discrimination complaint is not an adverse employment

action). Thus, Moryc has failed to state a plausible Title VII sex-discrimination claim, and MSP is entitled to judgment on the pleadings.

## II. Moryc's Title VII retaliation claim also fails.

### A. Portions of Moryc's Title VII retaliation claim are barred because Moryc failed to timely exhaust her administrative remedies.

The exhaustion requirements set forth in Part I(A) above apply equally to Moryc's Title VII retaliation claim under Count II of her complaint. Portions of Moryc's Title VII retaliation claim are barred because she did not file a charge of retaliation with the EEOC within the 300-day limitations period prescribed by Title VII. Moryc filed her EEOC complaint on June 12, 2025. (Ex. C-EEOC Complaint.)[2] Consequently, any alleged adverse action arising before August 16, 2024 is time-barred. Similarly, any alleged adverse action not included in her EEOC charge is also barred. *Younis v. Pinnacle Airlines, Inc*., 610 F. 3d 359, 361 (6th Cir. 2010.)

Turning to the complaint, as with her discrimination claim, Moryc's retaliation claim under Count II again incorporates the 435 preceding paragraphs, which span a decade. (ECF No. 5, PageID.271, ¶ 436.) To the extent Moryc now seeks to premise her Title VII retaliation claim on conduct alleged in those 435 paragraphs that occurred outside the period specifically identified in her EEOC charge, i.e. before October 1, 2024 or after June 12, 2025, or on allegations concerning subject matter not presented to the EEOC, those allegations are unexhausted and cannot support her claim.

---

[2] Her second Right to Sue from the EEOC is attached as Exhibit D.

Setting aside the 435 paragraphs, Count II specifically alleges the following purported adverse action:

> a. Failing to pay her back pay she is owed in the form of health insurance premiums deducted from her paycheck while she was not receiving health insurance coverage from MSP;
>
> b. Initiating false and retaliatory criminal and internal investigations against her;
>
> c. Failing to allow her to return to work; and
>
> d. Making false statements in legal proceedings against her.

(ECF No. 5, PageID.272.) Albeit not verbatim, her EEOC charge was limited to the four alleged actions above. (Ex. C.)

Critically, "[w]ith respect to retaliation claims, [a defendant's] actions are considered discrete retaliatory or discriminatory acts and each act constitutes a single occurrence even when it has a connection to other acts." *Pantoja v. Mich. Dep't of Corr.*, 2023 U.S. Dist. LEXIS 220956, *10 (2023) (citing *Davis v. Metro Parks and Recreation Department,* 854 Fed. Appx. 707, 713 (6th Cir., May 10, 2021) (quoting *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 110-11 (2002)). And, "[b]ecause these discrete acts 'must be judged individually, only incidents that took place within the timely filing period are actionable. *Pantoja,* at *10 (cleaned up).

Although her EEOC charge does not provide exact dates of the alleged adverse actions, her complaint fills in the blanks. The alleged "initiation of false and retaliatory criminal and internal investigations" is clearly time barred. Indeed, as conceded in her complaint, the investigations into misconduct by Moryc

commenced on October 19, 2020 and September 14, 2023 respectively—years before Moryc filed her EEOC charge. (ECF No. 5, PageID.264, ¶¶149, 386.) Consequently, to the extent her retaliation claim is premised on MSP's internal and criminal investigations into Moryc, it must be dismissed. Likewise, to the extent that Moryc's retaliation claim is premised on any conduct not included in her EEOC charge, it too must be dismissed.

**B. Moryc has failed to plausibly plead a retaliation claim.**

Setting aside the exhaustion issue, Moryc's retaliation claim still must be dismissed. To plead and prove retaliation under Title VII, a plaintiff must demonstrate that: (1) she engaged in activity protected by Title VII; (2) her exercise of such protected activity was known by the defendant; (3) thereafter, "the defendant took an action that was 'materially adverse' to the plaintiff"; and (4) "there is a causal connection between the [ ] protected activity and the [ ] adverse action." *Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.3d 333, 343-34 (6th Cir. 2021); *see also Jones v. Johanns,* 264 F. App'x 463, 466 (6th Cir. 2007) (citing *Abbott v. Crown Motor Co., Inc.,* 348 F.3d 537, 542 (6th Cir. 2003), and *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-68, (2006) (requiring a "materially adverse action" rather than an "adverse employment action")).

There are two types of protected activity under Title VII: (1) opposing an employer's discriminatory activity or practice made unlawful by the statute or (2) testifying, assisting, or participating in an investigation or proceeding under the statute. 42 U.S.C. § 2000e-3(a). For an activity to fall under the latter, "participation clause", "the instigation of proceedings leading to the filing of a

complaint or charge . . . is a prerequisite." *Booker v. Brown & Williamson Tobacco Co., Inc.,* 879 F.2d 1304, 1313 (6th Cir. 1989). Activities prior to the instigation of statutory proceedings are analyzed under the former—known as the opposition clause. *Id.* Title VII does not protect all "opposition" activity. *Holden v. Owens-Illinois, Inc.,* 793 F.2d 745, 751 (6th Cir. 1986). To be protected, a plaintiff must put her employer on notice that she is opposing a practice made unlawful by Title VII. *Brown v. VHS of Michigan, Inc.,* 545 F. App'x 368, 373 (6th Cir. 2013) (citing *Booker*, 879 F.2d at 1313). That is, the plaintiff must make it clear that she is opposing discrimination against a protected class. *Id.* at 374; *Speck v. City of Memphis*, 370 F. App'x 622, 626 (6th Cir. 2010). "An employee may not invoke the protections of the Act (Title VII) by making a vague charge of discrimination." *Brown,* 545 F. App'x at 373 (quoting *Booker,* 879 F.2d at 1313). Critically, the "protected activity" must involve conduct between an employer and an employee. *See Stanley v. ExpressJetAirlines, Inc.*, 808 F. App'x 351, 357 (6th Cir. 2020) ("[T]he key question is whether the complaint concerns conduct between an employer and its employee.") (citations omitted).

**1. A non-employee's allegations of assault do not constitute opposition to an unlawful employment practice.**

Beginning with the first element, Title VII "clearly delineates two options" for a "protected activity": "opposition to discriminatory practice" and "participation in an investigation." *Stanley v. ExpressJet Airlines, Inc.*, 808 F. App'x 351, 358 (6th Cir. 2020) (citing 42 U.S.C. § 2000e-3(a)). Only the former option is relevant in this

case.[3] To receive protection under Title VII's anti-retaliation provision, a plaintiff must oppose acts that [s]he believes are Title VII violations. *Wasek v. Arrow Energy Servs, Inc.,* 682 F.3d 463, 469 (6th Cir. 2012). In her EEOC charge, Moryc alleges that she "made numerous reports of sexual harassment, sexual assault, and sex discrimination by other employees to the Michigan State Police which they have failed to respond to appropriately." (Ex. C.) Moryc also noted, "I began making these reports in approximately 2020." (*Id.*) In her complaint, she alleges she reported sex discrimination and harassment in several complaints, on February 21, 2020, September 25, 2020, May 17, 2021, July 15, 2021, and April 9, 2023. (ECF No. 5, PageID.263., ¶ 374.) But, again, Moryc was terminated on August 9, 2021 and not reemployed until on or about October 2, 2024. In other words, Moryc was not an employee when she allegedly reported sex discrimination or harassment on April 9, 2023. As such, that reporting does not constitute protected activity under Title VII. *See Stanley,* 808 F. App'x at 357. Therefore, to the extent her retaliation claim is premised on her April 9, 2023 reporting, the claim fails and must be dismissed.

---

[3] The participation clause is not applicable because "Title VII protects an employee's participation in an employer's internal investigation into allegation of unlawful discrimination *only* where that investigation occurs pursuant to a pending Equal Employment Opportunity Commission charge." *Hamade v. Valiant Gov't Servs., LLC*, 807 Fed. App'x 546, 550 (2020) (emphasis in original). Moryc's EEOC charge was not filed until June 12, 2025 and the alleged acts of retaliation predated the filing of the EEOC charge as evidenced by her inclusion of those allegations in the charge itself. (Compare Ex. C with ECF No. 5, PageID.271-272.)

### 2. Moryc fails to allege a materially adverse action sufficient to support a Title VII retaliation claim.

Assuming arguendo that Moryc's reporting in her earlier complaints in 2020 and 2021 constituted protected activity,[4] to plead a plausible, Title VII retaliation also requires alleging action by an employer that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). The acts listed by Moryc do not meet that standard as pled.

*Back pay*.

Moryc's allegation that MSP "failed to pay her back pay in the form of insurance premiums withheld" cannot support her retaliation claim because judicial estoppel bars her from relitigating that issue. "When a party convinces a court to take a certain position, and later advocates an inconsistent position, the court can apply the doctrine of judicial estoppel to prevent that party from playing 'fast and loose' with the courts." *Han v. Hankook Tire Co.,* 799 F. App'x 347, 349 (6th Cir. 2020) (citing *Edwards v. Aetna Life Ins. Co.,* 690 F.2d 595, 598–99 (1982)). "There is no set formula for assessing when judicial estoppel should apply," *New Hampshire v. Maine,* 532 U.S. 742, 750 (2001), but courts typically weigh three factors: whether "a party's later position [is] 'clearly inconsistent' with its earlier position," *id.*; whether "the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a

[4] MSP accepts these allegations as true solely for purposes of argument in this motion under Rule 12(c).

later proceeding would create 'the perception that either the first or the second court was misled,'" *id.* (quoting *Edwards,* 690 F.2d at 599); and whether the party advancing the inconsistent position would gain an unfair advantage if permitted to proceed. *New Hampshire,* 532 U.S. at 751.

All three factors are met here, because the back-pay issue — including the insurance premiums and "over-taxing" Moryc now raises — has already been adjudicated in the Ingham County Circuit Court.

First, at an August 18, 2026 hearing, MSPTA, as Moryc's exclusive bargaining representative, confirmed that MSP had fully complied with its obligations under the arbitration award. That confirmation is wholly inconsistent with the back-pay claim Moryc now advances in this action.

Second, the circuit court accepted that representation and entered an order confirming that MSP owed Moryc nothing further. (Ex. E — Order Regarding Arbitration Award.)[5] The order expressly provides:

> Ordered that the Michigan State Police owes Megan Moryc nothing further pursuant to the arbitration award, including but not limited to any additional compensation, wages, salary, leave or other accrued time, fringe benefits, insurance or other employment benefits, benefit credits, retirement or pension-related benefits, or any other monetary or nonmonetary relief.

(*Id.*) MSPTA's earlier position was thus not merely offered — it was adopted by the court as the operative resolution of the back-pay issue.

[5] Matters of public record, including court orders, may be considered in a Rule 12(c) motion. *Northville Downs v. Granholm*, 622 F.3d 579, 586 (2010).

Third, permitting Moryc to recover back pay in this action, money a court has already determined, based on MSPTA's own representation, that she is not owed — would afford her exactly the unfair advantage judicial estoppel exists to prevent.

Because MSP does not owe Moryc any back pay as a matter of law, the alleged failure to pay it cannot constitute a materially adverse action, and this basis for her retaliation claim fails.

*Failing to allow her to return to work.*

Mich. Comp. Laws § 28.609(1) provides that the MCOLES act "applies to all law enforcement officers" absent a handful of inapplicable exceptions and states that the employment of law enforcement officers "is subject to the licensing requirements and procedures" of the act. MCOLES alone sets standards for licensure and training, including for officers who experience a break in service. *See* Mich. Comp. Laws § 28.609(2); Mich. Admin. Code, R 28.14401 *et seq*. Consequently, to be qualified for an appointment as an MSP Trooper, a person must be licensed by the MCOLES. Moryc's MCOLES' license has lapsed by operation of law. Mich. Comp. Laws § 28.609(11); (ECF No. 5, PageID.238.)[6] As such, she cannot exercise law enforcement authority in the State of Michigan and cannot be appointed as an MSP Trooper unless or until she licensed by MCOLES. Mich. Comp. Laws § 28.609(14)(d). It is undisputed that Moryc is not licensed by MCOLES. (ECF No. 5, PageID.238.) Accordingly, MSP cannot legally allow her to

[6] Moryc's MCOLES license actually lapsed on or about October 19, 2022—two years from the removal of police authority which occurred on October 19, 2020. (ECF No. 5, PageID.303.); Mich. Comp. Laws. § 28.609(11).

work as a Trooper. An objectively reasonable person would not be dissuaded from reporting discrimination merely because an employer refuses to take an action that would violate state law. MSP's inability to allow Moryc to work as a Trooper reflects compliance with an independent legal obligation, not retaliation for protected activity. Treating lawful compliance as retaliatory would effectively require employers to choose between violating state law and facing retaliation liability.

Moryc's contention that MSP should permit her to work in an "administrative capacity" also lacks merit. The assignment of menial or degrading duties can be materially adverse where the reassignment substantially diminishes the employee's responsibilities or otherwise make the employee's working conditions objectively less desirable.[7] *See Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014.) *Lindsey v. Whirlpool Corp.*, 295 F. App'x 758, 7740(6th Cir. 2008); *Burlington,* 548 U.S. at. 68-71. Being permitted to remain on paid administrative leave as opposed to being compelled to perform menial tasks would not "dissuade a reasonable worker from making a or supporting a charge of retaliation." Consequently, the "failure to allow her to return to work" is not materially adverse and her retaliation claim fails.

[7] Indeed, prior to Moryc's reemployment, MSP was sued for retaliation for requiring another MSP member to work in an administrative capacity pending MCOLES re-licensure. *See Surbrook v. Michigan State Police*, No. 375352, 2026 Mich. App. LEXIS 2038, 2026 WL 696863 (Mich. Ct. App. Mar. 11, 2026.) Unlike Moryc, that employee had not lost his Criminal Justice Information Services (CJIS) clearance and could have unescorted access to MSP properties.

*Making "false" statements in legal proceedings against her.*

Nor do MSP's arguments in litigation constitute a materially adverse action. It bears repeating Title VII's retaliation provision requires an action that is sufficiently adverse that it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington,* 548 U.S. at 68; *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2008). MSP's legal arguments in response to Moryc's claims do not alter the terms or conditions of her employment, impose a workplace consequence, or otherwise impose a penalty for engaging in protected activity. Rather, they constitute MSP's defense to the claims asserted against it. Accordingly, those arguments cannot themselves establish the materially adverse action necessary to sustain a Title VII retaliation claim. Further, public policy does not support treating an employer's litigation arguments as retaliatory conduct. Once an employee initiates litigation, the employer must be permitted to respond to the allegations, assert defenses, challenge the employee's factual and legal contentions, and advocate for its position without fearing that those arguments will themselves become the basis for a separate retaliation claim. Otherwise, an employer could be placed in the untenable position of either foregoing legitimate defenses or exposing itself to additional liability simply for defending the claims brought against it. Such a rule would chill legitimate advocacy, distort the adversarial process, and effectively give a retaliation claim leverage over the employer's right to defend itself. Title VII's anti-retaliation provision protects employees from adverse employment actions; it does not require an employer to

abandon its lawful litigation defenses. Where, as here, the challenged statements are made in the course of defending the litigation and do not independently impose a materially adverse employment action, they should not support a retaliation claim.

**3. Moryc fails to plausibly plead causation for her Title VII retaliation claim.**

A retaliation claim requires factual allegations, not conclusions, plausibly connecting the protected activity to the adverse action. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). To plausibly allege a causal connection between protected activity and an adverse action, a plaintiff must put forth some *facts* creating an inference that the adverse action would not have occurred without the employee first engaging in protected activity. *See Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). This causal link can be shown two ways, either (1) through direct evidence or (2) through "knowledge coupled with a closeness in time that creates an inference of causation." *Id.* at 566. In some cases, "temporal proximity between the protected activity and the adverse action, in and of itself, is sufficient to establish a causal connection." *Nguyen,* 229 F.3d at 566 (collecting cases). But "the more time that elapses between the protected activity and the adverse employment action, the more the plaintiff must supplement [her] claim with 'other evidence of retaliatory conduct to establish causality.' " *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 400-01 (6th Cir. 2010) (citation omitted). *See also*, *Ross v. Mich. State Univ. Bd. of Trustees,* No. 11-2278, 2012 U.S. App. LEXIS 17338, 2012 WL 3240261, at *3 (6th Cir. June 20, 2012) (affirming dismissal of a

retaliation claim noting that a delay of approximately one year was too long to support an inference of causation by itself); *Kean v. IT-Works, Inc.*, 466 F. App'x 468, 471 (6th Cir. 2012) (holding that, absent other evidence of retaliation, a two-and-a-half month gap is not sufficient to support an inference of causation); *Johnson v. Cleveland City Sch. Dist.*, 344 F. App'x 104, 113 (6th Cir. 2009) (holding that a gap of over one year between the plaintiff's protected activity and her termination was not "sufficiently close in time . . . to warrant an inference of causation"). The Supreme Court has suggested that temporal proximity alone is insufficient to establish a causal connection in the retaliation context when there is a lapse of more than three months between the protected activity and the allegedly adverse action. *See Clark Cty Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001). "The cases that accept mere temporal proximity . . . as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close." *Id.* (quotation omitted) (finding cases with three-and four-month gaps to be insufficient).

Turning the complaint, Moryc baldly alleges that "MSP and its employees engaged in this discrimination because [Moryc] opposed unlawful employment practices." (ECF No. 5, PageID.272.) Such an allegation is nothing more than a bare recitation of the causation element with no supporting factual detail about timing, decisionmakers, or circumstances tying any particular act to any particular protected activity. That is precisely the kind of conclusory pleading *Iqbal* holds a court need not credit. 556 U.S. 678. A complaint that fails to provide facts from

which the Court can draw a connection between protected activity and adverse action is insufficiently pleaded. *Cf. White v. Coventry Health & Life Ins. Co.,* 680 F. App'x 410, 414 (6th Cir. 2017); *Desormeaux v. Kalitta Air, LLC,* No. 25-1772, 2026 WL 1949105, at *8 (6th Cir. July 6, 2026) (affirming dismissal of Title VII retaliation claim for failure to allege that protected activity was but-for cause of adverse employment action); *Meilus v. Rest. Opportunities Ctr. United, Inc.,* No. 21-02554, 2021 WL 4868557, at *7 (S.D.N.Y. Oct. 15, 2021) ("Binding decisions have held on numerous occasions that in order to adequately plead causation in a retaliation claim under Title VII, a plaintiff's minimal burden is to plausibly allege but-for causation."). Moryc's bare allegation provides no factual basis from which to infer a causal relationship between the protected activity she alleges in 2020-2021 and the adverse actions she alleges in 2024-2025.

Nor can Moryc rely on temporal proximity to infer causation. Here, Moryc's alleged protected activity occurred in 2020 and 2021. Yet, the adverse actions in her EEOC charge did not occur until 2024-2025. A gap of that length—over three years— is the opposite of "very close" and as noted above, courts routinely reject causal inferences built on far shorter intervals.[8]

For these reasons, MSP is entitled to a judgment on the pleadings on Moryc's retaliation claim.

[8] Even if her April 9, 2023 report constituted protected activity, there was still nearly an 18-month gap between the alleged reporting and alleged adverse action in October, 2024 so temporal proximity is insufficient to infer causation.

## III. Moryc's substantive due process claim (bodily integrity) must be dismissed.

### A. Moryc's substantive due process claim is barred by the statute of limitations.

Count III of Moryc's First Amended Complaint asserts a claim under 42 U.S.C. § 1983. All § 1983 claims arising in the state of Michigan are subject to a three-year statute of limitations. *Rapp v. Putman*, 644 Fed. App'x 621, 626 (2016). Moryc's complaint was not filed until September 21, 2025, consequently, any alleged constitutional violation arising before September 21, 2022 is barred by the statute of limitations.

Turning to the allegations in Count III, the crux of Moryc's substantive due process claim is essentially two-fold. First, she claims the Defendants' alleged failure to address and properly respond to Moryc's alleged complaints of sex discrimination, harassment, and abuse of other victims, led to her being harassed in the workplace. Second, "MSP's" alleged decision to assign Antcliff as her Field Training Officer caused him to abuse her.[9] As explained below, these allegations do not give rise to a due process violation, but, even if they did, they are entirely time-barred.

Moryc was suspended in October of 2020, terminated in August of 2021, and, although reemployed in October 2, 2024, she has been on paid administrative leave

[9] The complaint expressly alleges that "MSP" assigned Antcliff as Moryc's Field Training Officer—not any individual defendant. (ECF No. 5, PageID.215.) This Court has already ruled that sovereign immunity bars 1983 claims against MSP. (ECF No. 21, PageID.606-607.)

since then. (ECF No. 5, PageID.216-217, ECF No. 5-2, PageID.302.) In other words, Moryc's claims of alleged harassment in the workplace accrued prior to October 2020 because it is undisputed that she has not been in the workplace since before October 2020. Thus, accepting her allegations as true, her claims related to workplace harassment would have accrued prior to October 2020 and are therefore time-barred. The same is true for Defendants' alleged decision to assign Antcliff as her Field Training Officer. That indisputably occurred in 2016—9 years before Moryc filed this lawsuit. (ECF No. 5, PageID.226.)

### B. Moryc's substantive due process claim fails as a matter of law.

Even if her substantive due process claim was not time-barred, it fails as a matter of law. Section 1983 permits a claim for damages against "[e]very person who, under color of [law], subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Because § 1983 has "a 'color of law' requirement," a defendant can be liable "only if state law, whether provided by statute or judicially implied, empowers him with some legal obligation to act." *Doe v. Claiborne County*, 103 F.3d 495, 512 (6th Cir. 1996) (citation omitted). A claim under § 1983 therefore consists of two elements: the defendant (1) must deprive the plaintiff of a constitutional or a federal statutory right and (2) must deprive the plaintiff of one of these rights while acting under color of state law (i.e., state action). *Id*. at 511. "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

Moryc's substantive due process claim against the individual defendants fails because, even accepting the allegations in the complaint as true, Moryc cannot establish that these Defendants violated a constitutional duty owed to her. The constitutional right at issue in Count III is the substantive due process right to bodily integrity. The Due Process Clause provides that no "State [shall] deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The purpose of the Due Process Clause is "to protect the people from the State, not to ensure that the State protect[s] them from each other." *DeShaney v. Winnebago Cnty Dep't of Soc. Servs,* 489 U.S. 189, 196 (1989). Meaning "the Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *Id.* There are, however, two exceptions under which the Constitution "imposes upon [the government] a corresponding duty to assume some responsibility for [the] safety and wellbeing" of an individual. *Id.* at 200. The first exception is when a "special relationship" exists between the state and the private individual due to the state's significant restraint on that individual's personal liberty. *Id.*; *see also Stemler v. City of Florence*, 126 F.3d 856, 867-68 (6th Cir. 1997). The second exception—the state created danger doctrine—applies when "the state takes an affirmative act that increases the victim's risk of harm" from private acts of violence. *Lipman v. Budish*, 974 F.3d 726, 733 (6th Cir. 2020); *see also Engler v. Arnold*, 862 F.3d 571, 575 (6th Cir. 2017). The Court already dismissed Moryc's state-created danger claim. (ECF

No. 21, PageID.607.) And, as will be explained below, the "special relationship" exception is also inapplicable.

Under this exception, the state has a duty to protect an individual when it has "so restrain[ed] an individual's liberty that it renders [her] unable to care for [her]self, and at the same time fails to provide for [her] basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety." *Lipman,* 974 F.3d at 743 (quoting *DeShaney*, 489 U.S. at 200). The application of this exception typically requires "some state action that applies force (or the threat of force) and show of authority made with the intent of acquiring physical control." *Jackson v. Schultz,* 429 F.3d 586, 590 (6th Cir. 2005). The state's obligation "arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf." *DeShaney*, 489 U.S. at 200.

Moryc has not alleged the existence of any such "special relationship." Moryc alleges that she was assaulted by Antcliff, her live-in boyfriend. Moryc does not allege that any defendant forced her to engage in an extramarital relationship with Antcliff, actively conceal that relationship, or cohabitate with Antcliff for years, even after she claims the abuse started.

Indeed, in her complaint, Moryc alleges that the abuse from Antcliff occurred from 2021 through March 2023. But, again, Moryc was suspended from employment by MSP in October 2020, terminated in August 2021, and was not reemployed by MSP until October 2, 2024. (ECF No. 5, PageID.216-217, ECF No. 5-

2, PageID.302.) Thus, during the entire period in which Moryc alleges the abuse occurred, she was either suspended or terminated from MSP, had no obligation to be around Antcliff, and was not subject to any employment-based relationship with the MSP. Moryc therefore cannot plausibly allege that Defendants exercised custody or control over her, restricted her ability to protect herself, or assumed an affirmative constitutional duty to protect her from the private conduct of another individual.

Because no special relationship existed during the relevant timeframe, Defendants had no constitutional duty to protect Moryc from the alleged conduct, and her substantive due process claim fails as a matter of law. Consequently, Defendants are entitled to a judgment on the pleadings.

## IV. Moryc's equal protection should be dismissed.

### A. Moryc's equal protection claim is time-barred.

"Under federal law, as developed in this Circuit, the statute of limitations period begins to run when the plaintiff knows or has reason to know that the act providing the basis of [their] injury has occurred." *Collyer v. Darling,* 98 F.3d 211, 220 (6th Cir. 1996); *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984). Stated differently, "[i]n determining when the cause of action accrues in § 1983 cases, we look to the event that should have alerted the typical lay person to protect [their] rights." *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 856 (6th Cir. 2003). The Court must therefore look at when the harm in question occurred, guided by the principle that "[a] plaintiff has reason to know of [her] injury when [s]he should have discovered it through the exercise of reasonable diligence." *Sevier*, 742 F.2d at

273. Moryc filed her complaint on September 21, 2025. Accordingly, because the allegations underlying her equal protection claim arose before September 21, 2022, they are time-barred.

The crux of Moryc's equal protection claim is two-fold. First, because "Defendants" assigned Antcliff as her Field Training Officer, she claims they are liable for his alleged abuse of Moryc. (ECF No. PageID.279.) Second, "Defendants" investigated and terminated Moryc for the same "horseplay" in which her male colleagues also engaged. (*Id.*, PageID.264, 279.) Both theories, however, are barred by the applicable statute of limitations. Antcliff was assigned as Moryc's FTO in 2016, and they began their sexual relationship almost immediately. (ECF No. 5, PageID.206.) According to Moryc, Antcliff first abused her in 2021. (*Id.*, PageID.222.) Consequently, Moryc would have been aware of her alleged injury, at the latest, in 2021 when Antcliff allegedly began abusing her. (ECF No. 5, PageID. 206, 222.) Because Moryc did not file this complaint within 3 years of the alleged injury, her claim is time-barred.

The same result follows to the extent Moryc's claim is premised on her investigation and termination for "horseplay." The investigation into Moryc's assault of her colleagues commenced in October 2020 and that she was ultimately terminated on August 9, 2021. (*Id.* at PageID.216-217.) Thus, her claim accrued at the latest on August 9, 2021. Moryc did not file this lawsuit until more than four years later, well after the 3-year statute of limitations had expired. Accordingly, the claim is time-barred and must be dismissed.

**B. Moryc fails to plausibly allege an equal protection violation.**

Even if her claim was not time barred, Moryc's equal protection claim fails as a matter of law. To state an equal protection claim, a plaintiff must adequately plead that the government actor treated her "disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Club Italia Soccer & Sports Org., Inc. v. Charter Twp of Shelby*, 470 F.3d 286, 298 (6th Cir. 2006), overruled on other grounds by *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591(2008). Thus, "[t]he threshold element of an equal protection claim is disparate treatment," *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006), and only intentional, purposeful discrimination violates the equal protection clause, *see Washington v. Davis*, 426 U.S. 229, 239-40, (1976).

Moryc's equal protection claim should be dismissed because the amended complaint does not plausibly allege that any Defendant intentionally treated Moryc differently because of her sex. Although the complaint repeatedly characterizes Defendants' conduct as sex discrimination, its factual allegations do not establish the essential predicate of an Equal Protection claim: disparate treatment, i.e. that Moryc was treated less favorable than a similarly situated person outside the protected class. An Equal Protection claim requires a plausible showing of intentional or purposeful discrimination — "discriminatory purpose . . . implies more than intent as volition or intent as awareness of consequences;" it requires evidence that "the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon

an identifiable group." *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979). Moryc's complaint is devoid of any such allegations.

Moreover, a disparate-treatment equal protection claim requires factual allegations that the plaintiff was treated differently from comparators who are "similarly situated in all relevant respects." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998); *Ctr for Bio-Ethical Reform, Inc. v. Napolitano,* 648 F.3d 365, 379 (6th Cir. 2011). That standard requires the plaintiff to identify a comparator who "dealt with the same supervisor, [was] subject to the same standards, and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct." *Mitchell v. Toledo* Hosp., 964 F.2d 577, 583 (6th Cir. 1992). Moryc's own allegations fail that standard. The principal comparator allegation is that Defendants "investigat[ed] a retaliatory complaint against [Moryc] and disciplin[ed] her for it, while failing to investigate and/or discipline her similarly situated male colleagues for similar allegations." (ECF No. 5, PageID.279.) But Moryc does not identify those allegedly similarly situated male colleagues, describe the conduct for which they were allegedly treated more favorably, identify the decisionmakers involved, or allege facts demonstrating that the same decisionmakers evaluated materially comparable conduct differently because Moryc was female. A comparator allegation stated at that level of generality is a legal conclusion, not a fact, and is exactly the kind of "naked assertion[] devoid of further factual enhancement" that *Iqbal* holds a court need not credit. 556 U.S. at 678.

The pleading defects are compounded by Moryc's abject failure to differentiate among the numerous individual defendants. The complaint attributes the alleged Equal Protection violations collectively to "Defendants." (ECF No. 5, PageID.278-279.) The complaint does not plausibly allege which individual defendant made which allegedly discriminatory decision, what facts that defendant knew, or how that defendant intentionally treated Moryc differently because of her sex. Section 1983 liability is personal. *See Grinter v. Knight,* 532 F. 3d 567, 575 (6th Cir. 2008) (personal involvement is required for personal liability).

In short, Moryc has *concluded* that she was subjected to sex discrimination, but she has not pleaded the factual allegations necessary to state a plausible Equal Protection claim. The Complaint does not identify a concrete similarly situated male comparator, does not allege materially comparable conduct and circumstances, and does not connect any particular individual defendant to an intentional sex-based decision. The equal protection count should therefore be dismissed under Rule 12(c).

## V. Moryc's First Amendment retaliation claim is ripe for dismissal.

To establish a First Amendment retaliation claim, Moryc must show that "(1) [she] engaged in protected conduct; (2) the defendants took an adverse action against [her]; and (3) a causal connection exists between the two." *Rudd v. City of Norton* Shores, 977 F.3d 503, 513 (6th Cir. 2020) (citing *Novak v. City of Parma*, 932 F.3d 421, 427 (6th Cir. 2019)). For a causal connection to exist, a decisionmaker must have been aware of the plaintiff's protected activity. *Thaddeus-X v. Blatter*,

175 F.3d 378, 387 n.3 (6th Cir. 1999) ("[T]he defendant must have known about the protected activity in order for it to have motivated the adverse action.").

Moryc's First Amendment retaliation claim fails, because, accepting the complaint's characterization of her interview as protected speech, she does not plausibly allege that any particular Defendant knew of that speech and then personally took an adverse action because of it. Instead, the complaint identifies a single alleged instance of protected speech—Moryc's statements to WLNS 6 news—and then attributes a series of employment-related actions to "Defendants" collectively or to MSP. That is insufficient to state an individual-capacity claim under § 1983.

Moryc's own pleading establishes the narrow scope of the alleged protected speech. In August 2024, Moryc allegedly began speaking with investigative reporter Todd Heywood of WLNS 6 News about what she characterized as corruption and cover-ups within MSP. (ECF No. 5, PageID.254.) The complaint alleges that Heywood began contacting MSP with questions sometime in fall 2024. (*Id.*) The First Amendment count then alleges that Moryc "made comments to WLNS 6 News as a private individual on a matter of public interest," and identifies those comments as her protected speech. (*Id.*, PageID.281.)

That allegation does not, however, establish that each Defendant knew about the speech. A First Amendment retaliation claim requires a causal connection between the protected speech and the adverse action. *Josephson v. Ganzel*, 115 F.4th 771, 783 (6th Cir. 2024). Causation cannot plausibly be inferred as to an

individual defendant who is not alleged to have known that the plaintiff engaged in the protected speech. Yet the Complaint does not allege, defendant by defendant, that Gee-Cram, Hinz, Nemecek, Herr, Deasy, Bock, Maki, or Buege, knew of Moryc's communications with WLNS, knew what Moryc told the reporter, or knew that Moryc intended to publicize allegations concerning MSP.

The distinction is particularly important because the complaint does not allege that Moryc's statements were publicly broadcast at the time she claims the principal adverse employment decisions occurred. Moryc alleges that she began speaking with Heywood in August 2024 and that Heywood began contacting MSP in fall 2024. But the complaint identifies July 7, 2025 as the date on which WLNS first published its multi-part series concerning Moryc's allegations. (*Id.*, PageID.254.) Thus, the complaint does not allege facts showing that each individual Defendant knew of Moryc's statements to WLNS merely because those statements were later published.

### A. The chronology does not plausibly connect the alleged adverse actions to Moryc's WLNS speech.

The chronology independently defeats the causal inference as to all of the alleged adverse actions.

Moryc identifies the following as retaliatory conduct: terminating her employment; failing to provide back pay; overtaxing her; failing to allow her to return to work; interfering with her MCOLES investigation; and making allegedly false statements concerning Defendants' knowledge and involvement in the Eaton County litigation. (ECF No. 5, PageID.281.)

But the Complaint's chronology shows that these allegedly adverse actions occurred before the alleged protected speech could have caused them. The complaint therefore cannot plausibly attribute those decisions to Moryc's WLNS speech. Moreover, the complaint attributes the alleged adverse actions to MSP—not an individual Defendant.

The February 13, 2025 termination illustrates the problem. The Complaint attributes the termination itself to MSP, alleging that "MSP terminated Tpr. Moryc" and that "MSP terminated Tpr. Moryc so that" she would remain unable to reactivate her MCOLES certification. (ECF No. 5, PageID.241, ¶ 266.) The complaint does not allege that an individual Defendant made the decision to terminate Moryc because of her WLNS speech, much less that an individual making the decision knew about the speech when they made it.

The same defect applies to the alleged withholding of back pay. Moryc alleges that MSP was still calculating her back pay in November 2024, that MSP provided a proposed calculation in May 2025, and that MSP continued to withhold approximately $8,500 in health-insurance deductions. (ECF No. 5, PageID.272, ¶¶ 329, 330, 439.) But these allegations identify MSP as the actor—not an individual defendant.

Likewise, the allegation that MSP "overtaxed" Moryc is directed at MSP's calculation and payment of her back pay. (ECF No. 5, PageID. 252-253, ¶¶ 322–

325.) Nothing in those allegations identifies an individual Defendant who made the tax calculation because of Moryc's speech.[10]

### B. The MCOLES allegations likewise do not establish First Amendment causation.

The complaint alleges that "Defendants" interfered with Moryc's MCOLES investigation by expanding its scope beyond the August 2021–August 2024 period. (*Id*. PageID. 281, ¶ 496(f).) But the factual allegations again principally attribute the conduct to MSP and do not connect it to Moryc's WLNS speech.

To the contrary, Moryc alleges that on November 4, 2024, F/Lt. Buege notified her that investigator Cherie Ballor had been assigned to conduct the MCOLES background investigation. (*Id*., PageID.238.) The investigation was expressly described as covering August 2021 through October 2024. (*Id*.) Moryc then alleges that Buege instructed her to complete the MCOLES affidavit and allegedly acknowledged that the application could not proceed while internal investigations remained open. (*Id*.)

Those allegations do not plausibly establish that Buege, or any other individual Defendant expanded the investigation because Moryc had spoken to WLNS. To the contrary, the complaint itself alleges that the background investigation was initiated as part of the MCOLES recertification process and was defined by an August 2021–October 2024 period.

---

[10] Moreover, judicial estoppel prohibits Moryc from pursuing these claims as discussed in part II(B)(2) above.

The complaint later alleges that Ballor investigated matters outside the stated scope, but those allegations concern the substance and scope of the investigation, not facts establishing that Ballor knew of Moryc's WLNS communications and acted because of them. Indeed, Moryc alleges that the WLNS series was not published until July 7, 2025. (*Id.*, PageID.254.) And, lastly, there is no allegation that any named Defendant expanded the scope of *MCOLES'* investigation.

At bottom, the amended complaint includes no facts demonstrating that any identifiable defendants were aware of the interview. *See Thaddeus-X,* 175 F.3d at 387 n.3; *see also Edgar v. City of Collierville*, 160 F. App'x 440, 442-43 (6th Cir. 2005) (affirming dismissal of First Amendment retaliation claim where decisionmaker was unaware of plaintiff's previous union activities). Nor does it allege how any specific defendant was motivated to take any adverse action against her due to the interview. *See Koch v. Dep't of Nat. Res, Div. of Wildlife,* 858 F. App'x 832, 837 (6th Cir. 2021) (finding that a claim for retaliation requires the allegation that the adverse action was "motivated at least in part" by the protected conduct (citing *Mezibov v. Allen*, 411 F.3d 712, 717 (6th Cir. 2005))); *see also Boxill v. O'Grady,* 935 F.3d 510, 518 (6th Cir. 2019) ("Summary reference to a single, five-headed 'Defendants' does not support a reasonable inference that each Defendant is liable for retaliation.") (emphasis in original). And, finally, the complaint repeatedly attributes the challenged actions to "MSP." But § 1983 does not permit individual-capacity liability based solely on an individual's employment by a state

agency. Each individual defendant must have personally participated in the alleged constitutional violation. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). The complaint does not plausibly allege that any particular Defendant knew of Plaintiff's private communications with WLNS before taking those actions, or that any Defendant acted because of those communications. Accordingly, even accepting that Moryc's WLNS interview constituted protected First Amendment speech, the Amended Complaint does not plausibly allege personal involvement or causation as to any individual Defendant. The Court should therefore dismiss Count V under Rule 12(c).

## VI. The individual Defendants are entitled to qualified immunity.

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). These questions may be answered in any order, and if either one is answered in the negative, qualified immunity protects the officials from civil damages. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). "A clearly established right is one that is 'sufficiently clear that *every* reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Reichle v. Howards,* 566 U.S. 658, 664 (2012)) (emphasis added.) The plaintiff bears the burden of showing that a right is clearly established. *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 681 (6th Cir. 2013).

Here, Moryc's claims fail on both prongs. As explained above, even accepting her allegations as true, there was no constitutional violation.

Even if the Court found a constitutional violation, the individual Defendants would still be immune from suit on Counts III through V. Qualified immunity is "an immunity from suit rather than a mere defense to liability." *Pearson,* 555 U.S. at 231 (quotation omitted), and it exists to spare officials the burdens of discovery and trial when the complaint does not plausibly allege a violation of clearly established law. *Iqbal,* 556 U.S. at 685. Moryc bears the burden of identifying such law. *Quigley*, 707 F.3d at 681. She cannot.

The inquiry is specific and defendant-by-defendant. A right is clearly established only when precedent has placed the question "beyond debate." *al-Kidd,* 563 U.S. at 741. The law must be dictated by controlling authority or "a robust consensus of cases of persuasive authority." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (quoting *al-Kidd*, 563 U.S. at 741-42). Courts are told "not to define clearly established law at a high level of generality." *al-Kidd*, 563 U.S. at 742.

Because § 1983 liability is personal, the inquiry also runs defendant by defendant. *Iqbal,* 556 U.S. at 676; *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010) . A complaint that attributes every challenged act to "MSP" or to "Defendants" collectively cannot show that a particular official violated a particular clearly established right. *Boxill*, 935 F.3d at 518. That defect alone entitles the individual Defendants to immunity.

*No clearly established law imposed a duty to protect Moryc from her former partner.*

Count III asserts a substantive due process right to be protected from bodily harm by a private person, Antcliff, her live-in partner. *DeShaney* holds that the Due Process Clause generally confers no such right. 489 U.S. at 196-97. The recognized exceptions are custody and state-created danger, and the Court has already dismissed the latter. (ECF No. 21, PageID.607.) Moryc alleges no restraint on her liberty by any Defendant. She alleges abuse that occurred from 2021 through March 2023, when she was suspended or terminated and free to live where and with whom she chose.

No decision of the Supreme Court or the Sixth Circuit holds that a state employer's handling of an employee's complaints about a private partner creates a constitutional duty, still less where the plaintiff was not employed when the abuse occurred. The Supreme Court has held that even a victim armed with a mandatory restraining order had no constitutionally protected entitlement to police enforcement against her estranged husband. *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 768 (2005). A reasonable official could not have understood that responding imperfectly to complaints, with no such order in place, violated the Constitution.

Her theory that Antcliff was assigned as her field training officer in 2016 fares no better. The complaint attributes that decision to "MSP," not to any individual Defendant. (ECF No. 5, PageID.215.) No authority holds that assigning a training officer creates constitutional liability for a relationship the trooper later entered and for abuse that allegedly began five years later.

*No clearly established law supports Moryc's equal protection theory.*

Count IV requires intentional disparate treatment of similarly situated persons. *Club Italia*, 470 F.3d at 298. Comparators must be similar "in all relevant respects." *Ercegovich*, 154 F.3d at 352. Moryc names no comparator and identifies no decisionmaker. She does not allege comparable conduct by a male colleague. Her allegation is that men engaged in "horseplay," while she was investigated and terminated after pleading no contest to assault and battery of colleagues. (ECF No. 5, PageID.264, 279.) Defendants are aware of no authority holding that investigating and disciplining such an employee violates equal protection because unnamed coworkers engaged in unspecified conduct. A reasonable official could not have known that the Constitution prohibited this discipline, so the individual Defendants are immune.

*No clearly established law supports Moryc's First Amendment theory.*

No precedent puts an official on notice that acting without knowledge of protected speech is unlawful. A retaliation claim requires that the defendant "must have known about the protected activity in order for it to have motivated the adverse action." *Thaddeus-X,* 175 F.3d at 387 n.3. Moryc does not allege that Gee-Cram, Hinz, Nemecek, Herr, Deasy, Bock, Maki, or Buege knew of her communications with WLNS, what she said, or that she intended to publicize it. WLNS did not publish its series until July 7, 2025, months after the February 13, 2025 termination decision and the other principal actions she challenges. (ECF No. 5, PageID.241, 254.) A reporter's inquiries to MSP in fall 2024 do not allege that

any particular official knew of Moryc's statements. No authority holds that an official who is not alleged to have known of protected speech violates clearly established law by acting adversely toward the speaker.

*No precedent permits liability based on collective attribution.*

Section 1983 liability is personal. *Iqbal,* 556 U.S. at 676. Yet the complaint attributes the termination, the back-pay calculation, the tax withholding, and the MCOLES process to "MSP" or to "Defendants" collectively. (ECF No. 5, PageID.241, 252-253, 272, 281.) Because MSP is immune from § 1983 damages, and no individual Defendant is tied to a decision made because of the WLNS interview, Moryc cannot identify clearly established law that any individual Defendant violated.

Because Moryc cannot identify controlling authority or robust consensus of persuasive authority that places any alleged constitutional violation beyond debate, the individual Defendants are entitled to qualified immunity on Counts III, IV, and V.

## CONCLUSION AND RELIEF REQUESTED

Based on the foregoing, Defendants respectfully request that this Court, 1) grant this motion for judgment on the pleadings, 2) grant qualified immunity to the individual Defendants, 3) dismiss all Plaintiff's claims with prejudice, and 4) grant Defendants such additional and further relief as the Court deems appropriate.

Respectfully submitted,

/s/ *Mary A. Waddell*
Mary A. Waddell
Assistant Attorney General
Attorney for Defendants
MI Dep't of Attorney General
State Operations Division
P.O. Box 30754
Lansing, MI 48909
517.335.7573
waddellm1@michigan.gov
P70545

Dated: September 22, 2026

**CERTIFICATE OF SERVICE**

I certify that on September 22, 2026, I electronically filed the foregoing papers with the Clerk of the Court using the ECF system, which will provide electronic copies to counsel of record, and I certify that my secretary has mailed by U.S. Postal Service the papers to any non-ECF participant.

/s/ *Mary A. Waddell*
Mary A. Waddell
Assistant Attorney General
Attorney for Defendants
State Operations Division

2025-0444648-A