**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**MEGAN MORYC**,
Plaintiff,

v.

**MICHIGAN STATE POLICE**, et al.,
Defendants.

Case No. 1:25-cv-1127

Hon. Robert J. Jonker
Mag. Phillip J. Green

---

**NOTICE TO COURT REGARDING RESOLUTION OF PLAINTIFF'S MOTION TO COMPEL DISCOVERY AND REMAINING DISPUTES**

Plaintiff and Defendant, through the undersigned counsel, respectfully submit this Joint Notice to update the Court regarding the status of discovery discussed during the Motion to Compel hearing on September 23, 2026. Following the hearing, counsel for the Parties met and conferred in a good-faith effort to resolve the issues raised in Plaintiff's Motion to Compel. As a result of those discussions, the Parties have successfully resolved all but three of the disputed issues presented to the Court. The Parties agree that Defendants will respond to the discovery requests included in the Joint Discovery Resolution attached as Exhibit 1. Notwithstanding that agreement, Defendants retain the right to assert any applicable privileges or designate material as "confidential" in accordance with the Protective Order (ECF No. 35.) Defendants agree that they will provide a response to Plaintiff's Interrogatories within two weeks of entry of this Notice. Defendants agree that they will provide responses to the Requests for Production on a rolling basis as productions become available, and that the initial production will be made to Plaintiff within four weeks of entry of this Notice. If the initial

production is incomplete, the parties will confer in good faith to discuss a subsequent production deadline. Pursuant to the Court's verbal directive on September 23, 2026, as only three issues remain, the Parties are submitting them to this Court for resolution. Pursuant to the Court's verbal directive, the Parties believe this means that the September 28, 2026 hearing will be adjourned.

**If the Parties misunderstood the Court's verbal directive, and if the Court intends to hold a hearing on Monday, September 28, 2026 to resolve these three remaining issues, the Parties respectfully request that the Court notify their counsel as soon as possible.**

The following disputes remain unresolved, and the Parties respectfully request a ruling on whether Defendants must provide a response to the following RFPs:

**REQUEST FOR PRODUCTION NO. 15:**

Please identify and produce all personnel records, including but not limited to, employee reviews and evaluations, complaints, disciplinary records, counseling memos, performance improvement plans, Internal Affairs (IA)/Professional Standards Section (PSS) investigation records, settlement agreements, ~~arbitration records, training records, testing records, resumes, cover letters, written endorsements, and/or MSP Trooper Recruit School records,~~[1] for every current and former MSP employee listed as a witness in your Initial Disclosures. This request includes any documentation of each individual's signature of acknowledgement, in which the individual acknowledged they had read MSP's policy and procedures for domestic violence, workplace harassment, retaliation, discrimination, and CSC investigation procedures from January 1, 2016 to present.

**A. Plaintiff's position:**

[1] Plaintiff agrees to modify RFP 15 to remove these items from her request.

The Sixth Circuit has not issued a binding published decision requiring a party to make a threshold factual showing of witness unreliability before obtaining discovery directed at credibility or impeachment in ordinary civil litigation. The general rule, consistent with Rule 26(b)(1)'s text and its broad and liberal construction, is that credibility and impeachment evidence is discoverable without a special predicate showing.

The Sixth Circuit has long recognized that facts tending to show interest, bias, or motive are admissible at trial via cross-examination. *Majestic v. Louisville & N.R. Co*., 147 F.2d 621, 627 (6th Cir. 1945). In *Majestic*, the court held that "facts tending to show interest, bias, or motive on the part of a witness may be elicited on cross-examination," and that such facts are relevant to the credibility of a witness even if they are "wholly immaterial or prejudicial to one of the parties on the main issue of the case." *Id*. The court emphasized that "the field of external circumstances from which probable bias or interest may be inferred is infinite. ... encompassing all facts and circumstances which, when tested by human experience, tend to show that a witness may shade his testimony for the purpose of helping to establish one side of a cause only." *Id*.

In *Wittbrot v. Anderson*, 262 F. Supp. 10, 13 (W.D. Mich. 1966), the Western District of Michigan recognized the foundational principle that under federal rules of discovery, discovery is available not only for the purpose of obtaining admissible evidence but also for obtaining that which might lead to admissible evidence.

In *Kallstrom v. City of Columbus*, the Sixth Circuit recognized that police officers have a constitutionally protected privacy interest in certain personal identifying information contained in their personnel files (specifically, their home addresses, phone numbers, driver's licenses, and the names, addresses, and phone numbers of their family members) where disclosure of such information could create a risk of serious harm. 136 F.3d 1055, 1064 (6th Cir. 1998). Here, there

is no risk of serious bodily harm, and Defendants can redact any personally identifying information in the records Plaintiff seeks.

The Eastern District of Michigan has consistently applied *Kallstrom* to permit redaction of personal identifying information while ordering production of the remainder of the personnel file, including disciplinary records, misconduct complaints, and related findings. *Sanford v. City of Detroit*, 355 F. Supp. 3d 619, 622–23 (E.D. Mich. 2019); *Reid v. Shoudy*, No. 23-11358, 2024 WL 4697671, *7 (E.D. Mich. Nov. 6, 2024); *Brown v. Scaglione*, No. 20-10192, 2021 WL 4472783, *10-11 (E.D. Mich. Sept. 30, 2021). In *Wynes v. City of Royal Oak*, the court held that because the defendants had not shown that the limited disclosure of redacted versions of the personnel files would pose a substantial risk of serious bodily harm, the officer could not prevent disclosure on due-process grounds. The court ordered production of the personnel files subject to redaction of the officer's *Kallstrom*-identified personal information. No. 2:16-CV-12656, 2017 WL 2222551, *7-8 (E.D. Mich. May 22, 2017). That option is available here, as these records can be produced as confidential under the Protective Order entered in this matter.

In *Lawrence v. Van Aken*, the Western District of Michigan applied the same principle encompassed in the Eastern District cases cited above, of ordering production of factual materials subject to a confidentiality order when no privilege applies. 316 F. Supp. 2d 547, 554 (W.D. Mich. 2004). The court held that even where a state-law confidentiality interest exists, the appropriate remedy is not to bar discovery, but rather to enter a confidentiality order under Fed. R. Civ. P. 26(c) protecting the use and dissemination of the discovered material. *Id.* This approach is consistent with the protective order framework applied in the Eastern District *Kallstrom* cases.

In *State Farm Mut. Auto. Ins. Co. v. Universal Health Grp., Inc.*, 325 F.R.D. 602, 606 (E.D. Mich. 2016), the Eastern District of Michigan held that settlement agreements between an insurer

and medical providers were relevant to witness bias and therefore discoverable under Rule 26(b)(1). The court rejected the argument that the requesting party had not demonstrated that the agreements were relevant to bias, finding instead that there was a reasonable likelihood that the witnesses in question would testify at trial and that the agreements could be used to explore bias.

In *Weidman v. Ford Motor Co.*, No. CV 18-12719, 2021 WL 2349400, at *7 (E.D. Mich. June 9, 2021), the Eastern District recognized the advisory committee's note to the 2015 amendment to Rule 26, which states that information that could be used to impeach a likely witness, although not otherwise relevant to the claims or defenses, might be properly discoverable, illustrating the principle that impeachment-related information occupies a recognized place within the scope of civil discovery under Rule 26(b)(1).

**B. Defendant's position:**

Rule 26(b)(1) permits discovery of any nonprivileged matter that is "relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Relevance and proportionality are not formalities; they are independent gatekeeping requirements that the requesting party bears the burden of satisfying. See Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment (restoring proportionality to the "explicit language" defining the scope of discovery to guard against "over-discovery"). Moryc's request — for the complete personnel files of 43 potential witnesses, without regard to whether any witness's credibility is genuinely in dispute or what specific bias or impeachment material each file could plausibly contain — fails at every step of this inquiry.

The cases Moryc relies upon do not hold that a party is entitled to discover an entire personnel file merely because a witness might testify. *Majestic* addressed the admissibility, at trial, of specific facts already known to show interest or bias — it says nothing about the scope of pretrial discovery, let alone about wholesale production of personnel files as a matter of course. 147 F.2d at 627. Likewise*, State Farm and Weidman* involved a showing that a specific, identified category of material (lawsuit settlement agreements bearing directly on a witness's financial stake, or impeachment material tied to a particular likely witness) had some articulable connection to bias. See *State Farm*, 325 F.R.D. at 606. Moryc has made no comparable showing here as to any witness, let alone all of them. A blanket demand for personnel files untethered to any theory of what impeachment material each file is expected to contain is a fishing expedition, not a discovery request grounded in the claims or defenses actually at issue in this action. See *Surles ex rel. Johnson v. Greyhound Lines, In*c., 474 F.3d 288, 305 (6th Cir. 2007) (discovery rules are not a license for a "fishing" expedition).

Moryc's request sweeps in entire personnel files including medical information, benefits records, tax and payroll documents, performance reviews unrelated to any disputed fact, prior addresses, and other categories with no conceivable bearing on credibility or bias in this case. Rule 26(b)(2)(C) requires the Court to limit discovery where "the burden or expense of the proposed discovery outweighs its likely benefit." Producing complete personnel files for every potential witness imposes a substantial burden on MSP and a significant privacy intrusion on non-party employees who have no connection to the claims at issue beyond potentially testifying. Against that burden, Moryc offers nothing but speculation that something impeaching might be found somewhere within those files. That is precisely the kind of disproportionate discovery Rule 26 is designed to prevent. Moryc's reliance on *Kallstrom* actually cuts against unrestricted

production. *Kallstrom* recognized a constitutionally protected privacy interest in personal information contained in personnel files, and the "risk of serious harm" discussed there arose in the specific context of undercover officers facing retaliation from those they had investigated — a fact pattern with no analogue here. 136 F.3d at 1064. The absence of that particular risk does not mean the underlying privacy interest disappears; it means only that one basis for withholding the information outright is unavailable. It does not follow that non-party witnesses lose all privacy protection over irrelevant personal information contained in their files. The proper application of *Kallstrom*-line cases such as *Sanford, Reid,* and *Brown* is to limit production to records actually relevant to the litigation — not to treat those cases as authorizing wholesale production of personnel files whenever a plaintiff asks for them. The request should be denied.

**REQUEST FOR PRODUCTION NO. 16:**

Please identify and produce all personnel records, including but not limited to, employee reviews and evaluations, complaints, disciplinary records, counseling memos, performance improvement plans, Internal Affairs (IA)/Professional Standards Section (PSS) investigation records, settlement agreements, ~~arbitration records, training records, testing records, resumes, cover letters, written endorsements, and/or MSP Trooper Recruit School records~~, [2] from wherever they may be stored, for Defendants Gee-Cram, Hinz, ~~Nemecek, Herr, Deasy, Bock, Maki, and Buege~~.[3] This request includes any documentation of each individual's signature of acknowledgement, in which the individual acknowledged they had read MSP's policy and procedures for domestic violence, workplace harassment, retaliation, discrimination, and CSC investigation procedures from January 1, 2016 to present.

[2] Plaintiff agrees to modify RFP 16 to remove these items from her request.
[3] The stricken Defendants are included in the scope of RFP 15.

**A. Plaintiff's position:**

See Plaintiff's position regarding RFP 15.

**B. Defendant's position:**

See Defendant's position regarding RFP 15.

**REQUEST FOR PRODUCTION NO. 29:**

Please identify and produce all records, documents, communications, memorandums, reports, supplements, investigative reports, photographs, video or audio recordings, notes, drafts, and a full, complete, unredacted, and unfiltered incident log for the following investigative reports, regarding:[4]

- OIR 64-5103-18
- IA-085-2019
- PSS-083-20
- PSS-535-20
- PSS-536-20
- ~~PSS-542-20~~
- ~~PSS-544-20~~
- PSS-557-20
- ~~PSS-600-20~~
- PSS-646-20
- OIR 10-133-20
- ~~OIR 70-246-20~~
- PSS-321-21
- PSS-340-21
- PSS-365-21
- PSS-409-21
- OIR 50-11-21
- ~~PSS-052-22~~
- PSS-055-22
- PSS-390-22
- PSS-740-22
- PSS-191-23
- PSS-199-23
- ~~PSS-239-23~~

[4] Plaintiff agrees to modify RFP 29 to remove the stricken items from her request.

- ~~PSS-627-23~~
- PSS-724-23
- PSS-766-23
- OIR 10-595-23
- PSS-110-24
- PSS-185-24
- PSS-309-24
- PSS-719-24
- PSS-758-24
- PSS-030-25
- PSS-049-25
- PSS-295-25
- PSS-258-26

**A. Plaintiff's position:**

Fed. R. Civ. P. 26 provides that parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. The rule expressly provides that information within this scope need not be admissible in evidence to be discoverable. Each of these sets of investigative records is discoverable pursuant to Rule 26 for the reasons identified below.

- OIR 64-5103-18
  - These records are from a domestic violence complaint where Plaintiff was a responding officer. One of the male members of the Lakeview Post openly made discriminatory comments to Plaintiff based on gender. These records are sought for the purposes of assessing credibility of Defendants' witnesses.
- IA-085-2019
  - These records are from a complaint by a female civilian regarding harassment by male troopers at the Lakeview Post. The records include the same perpetrator and behavior used against Plaintiff with the harassment she experienced at this post. These records are sought for the purpose of identifying a pattern of behavior by men at the Lakeview Post who exhibited harassing behavior against women.
- PSS-083-20

  - These records are from a complaint made by Plaintiff due to harassment and are sought for the purposes of supporting Plaintiff's retaliation and discrimination claims.
- PSS-535-20
  - These records are from a complaint made by Plaintiff due to harassment she experienced and are being sought for the purposes of supporting Plaintiff's retaliation and discrimination claims.
- PSS-536-20
  - These records are from a complaint made by Plaintiff due to harassment she experienced and are being sought for the purposes of supporting Plaintiff's retaliation and discrimination claims.
- PSS-557-20
  - These records are from a complaint made by Plaintiff due to a male trooper secretly recording Plaintiff and are being sought for the purposes of supporting Plaintiff's retaliation and discrimination claims.
- PSS-646-20
  - These records are from a complaint made by Sgt. Metivier against Plaintiff in retaliation for Plaintiff's complaint against him and are being sought for the purposes of supporting Plaintiff's retaliation and discrimination claims.
- OIR 10-133-20
  - These records are from a criminal complaint initiated by Plaintiff and another female law enforcement professional reporting a colleague of Plaintiff for gross misconduct. They are being sought for the purposes of supporting Plaintiff's retaliation and discrimination claims.
- PSS-321-21
  - These records are from a complaint made by Plaintiff against numerous members of the Lakeview Post for harassment, gender discrimination, retaliation, and hostile work environment. They are being sought for the purposes of supporting Plaintiff's retaliation and discrimination claims.
- PSS-340-21
  - These records are from an internal investigation against Plaintiff's abuser, former trooper Trevin Antcliff. They are being sought for the purposes of supporting Plaintiff's retaliation and discrimination claims.
- PSS-365-21
  - These records are from a complaint made by Plaintiff in reference to two department members who put her safety at risk. They are being sought for the purposes of supporting Plaintiff's retaliation and discrimination claims.
- PSS-409-21
  - These records are from a retaliatory complaint made by Sgt. Metivier and members of MSP Professional Standard's Section against Plaintiff because of her complaint PSS 321-21 of harassment, discrimination, and sexual harassment. During an interview for this investigation, Plaintiff learned for the first time the existence of PSS-083-20, PSS-535-20, and PSS-536-20. They are being sought for the purposes of supporting Plaintiff's retaliation and discrimination claims.
- OIR 50-11-21

  - These records are from the criminal investigation against a male trooper for secretly recording Plaintiff and are being sought for the purposes of supporting Plaintiff's retaliation and discrimination claims.
- PSS-055-22
  - These records are from a complaint made by Plaintiff against a male member of MSP who provided confidential and privileged information about Plaintiff to a non-law enforcement third party individual in retaliation for her previous complaints. They and are being sought for the purposes of supporting Plaintiff's retaliation and discrimination claims.
- PSS-390-22
  - These records are from an investigation conducted by Spl/Lt. Tabaczka of sexual harassment by a supervisor in MSP. Spl/Lt. Tabaczka was also an individual who interviewed Plaintiff when she described the sexual assault she endured. Tabaczka concluded Plaintiff did not detail sexual assault because she did not specifically say the words "rape" or "sexual assault" in her interview. Plaintiff seeks these records for the purposes of identifying comparator investigations in support of Plaintiff's retaliation and discrimination claims.
- PSS-740-22
  - These records are from an investigation conducted by Spl/Lt. Horan of sexual harassment by a command supervisor in MSP. Horan was also the primary investigator for Plaintiff's domestic violence and sexual assault complaint and concluded Plaintiff was not sexually assaulted because she did not use the word "rape" or "sexual assault." Plaintiff seeks these records for the purposes of identifying comparator investigations in support of Plaintiff's retaliation and discrimination claims.
- PSS-191-23
  - These records are from an investigation against Plaintiff's former abuser trooper Trevin Antcliff. These records are sought for the purposes of assessing credibility of Defendants' witnesses.
- PSS-199-23
  - These records are from an investigation against Plaintiff's former abuser trooper Trevin Antcliff. These records are sought for the purposes of assessing credibility of Defendants' witnesses.
- PSS-724-23
  - These records are from an investigation conducted by Spl/Lt. Tabaczka of a reported "sexual encounter on duty." Plaintiff seeks these records for the purposes of identifying comparator sexual assault and sexual harassment investigations in support of Plaintiff's retaliation and discrimination claims.
- PSS-766-23
  - These records are from an investigation conducted by Spl/Lt. Horan of a trooper reportedly lying. These records are sought for the purposes of assessing credibility of Defendants' witness Horan.
- OIR 10-595-23
  - These records are from MSP's criminal perjury investigation against Plaintiff. These records are being sought for the purposes of supporting Plaintiff's retaliation and discrimination claims.

- PSS-110-24
  - These records are from Spl/Lt. Tabaczka's investigation into a complaint alleging a "hostile work environment" within MSP, as potentially relevant to whether other employees reported similar concerns and whether Plaintiff's allegations reflect broader practices within the Department. These records are being sought for the purposes of supporting Plaintiff's retaliation and discrimination claims.
- PSS-185-24
  - These records are from Plaintiff's complaint against investigators for retaliating against Plaintiff for making her complaint about sexual assault, and ultimately not investigating the sexual assault. These records are being sought for the purposes of supporting Plaintiff's retaliation and discrimination claims.
- PSS-309-24
  - These records are from an internal investigation of Plaintiff initiated following Defendants' receiving notice that Plaintiff had filed a complaint with the MDCR, which the MDCR was investigating. These records are being sought for the purposes of supporting Plaintiff's retaliation and discrimination claims.
- PSS-719-24
  - These records are from Spl/Lt. Tabaczka's investigation into a complaint alleging a "hostile work environment" within MSP, as potentially relevant to whether other employees reported similar concerns and whether Plaintiff's allegations reflect broader practices within the Department. These records are being sought for the purposes of supporting Plaintiff's retaliation and discrimination claims.
- PSS-758-24
  - These records are from an internal investigation involving Spl/Lt. Tuckey where he allegedly failed to act in a professional manner. Subsequently, Tucky was the individual who conducted the investigation of perjury allegations against Plaintiff. These records are sought for the purposes of assessing credibility of Defendants' witnesses.
- PSS-030-25
  - These records are from an internal investigation involving Spl/Lt. Tuckey, as potentially relevant to his credibility, professionalism, training, and qualifications to conduct internal investigations. These records are also relevant to his subsequent assignment to investigate the allegations of perjury against Plaintiff, an investigation that ultimately resulted in Plaintiff's second termination.
- PSS-049-25
  - These records concern an internal investigation involving Spl/Lt. Tuckey, as potentially relevant to his credibility, professionalism, training, and qualifications to conduct internal investigations. These records are also relevant to his subsequent assignment to investigate the allegations of perjury against Plaintiff, an investigation that ultimately resulted in Plaintiff's second termination.
- PSS-295-25
  - These records are from an internal investigation concerning allegations of "discriminatory practices" by Col. James Grady, as potentially relevant to whether similar practices existed within the Department, whether such practices were known or supported by senior leadership, and whether senior leadership used

similar methods in its treatment of members, including Plaintiff, who raised concerns about Department practices.

- PSS-258-26
    - These records are from Plaintiff's complaint against then Lt. Col. Aimee Brimacombe concerning allegedly false testimony in the Plaintiff's State civil litigation case 2024-657-CD.

**B. Defendant's position:**

It bears repeating, Rule 26(b)(1) requires that discovery be relevant to a claim or defense *and* proportional to the needs of the case; it does not permit production merely because a plaintiff requests it. Moryc's operative claims are limited to conduct occurring in 2023 forward (PageID.1047, 1053)—yet the majority of the requested files predate that period by years. (For the Court's reference, the two-digit number at the end of the file identifier is the year.) Files concerning conduct outside the actionable time frame cannot be relevant to the claims actually at issue. Notably, Moryc does not have a harassment or hostile work environment claim in this case. Yet a significant portion of the requested files are justified expressly on the basis that they involve "harassment" or "hostile work environment." Records sought to establish claims that are not pled are not relevant. A discovery request cannot be justified by reference to a theory of liability that is not before the Court; relevance must be assessed against the discrimination or retaliation claim actually at issue, not against harassment or hostile-work-environment allegations that exist nowhere in the operative pleading.

Several requests are justified only by a generic "credibility" rationale (e.g., OIR 64-5103-18, PSS-766-23**)** — but credibility is not itself a claim or defense, and specific instances of conduct are not properly discoverable to attack a witness's character under FRE 608(b). A bare assertion that a file helps "assess credibility" or shows a "comparator investigation" is not sufficient without a specific connection to the elements of Moryc's retaliation and discrimination claims. Further, numerous files reference individuals who are not Defendants in this action,

including Tabaczka, Horan, Tuckey, Grady, and Brimacombe. Moryc seeks 27 separate files spanning nearly a decade, multiple posts, and unrelated subject matters (domestic violence, criminal investigations), most of which fall outside the 2023-forward period to which her claims are limited. Internal affairs files routinely run hundreds of pages each with witness statements and exhibits; production here would likely total several thousand pages, much of it implicating the privacy interests of non-party subjects, complainants, and witnesses uninvolved in this case. The Court should limit discovery to files directly relevant to investigations of Moryc occurring in 2023 or later, and deny production of the remaining files — which rest on non-parties, predate the actionable period, or are justified only by reference to harassment or hostile-work-environment theories not before the Court — as disproportionate and insufficiently tied to any claim or defense actually at issue.

Respectfully Submitted,

| | |
|---|---|
| ***/s/ Nicole Cote*** | ***/s/ Mary Waddell (with permission)*** |
| Nicole Cote (P86815) | Mary A. Waddell (P70545) |
| Abdnour Weiker LLP | Assistant Attorney General |
| Attorney for Plaintiff | Attorney for Defendants |

Dated: September 25, 2026

**PROOF OF SERVICE**

I hereby certify that on September 25, 2026, I filed this document by use of this Court's ECF system, which will serve copies to the Clerk of Courts and all counsel of record.

Respectfully submitted,

*/s/ Nicole Cote*
Nicole Cote