**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**MEGAN MORYC**,
Plaintiff,

v.

**MICHIGAN STATE POLICE**, et al.,
Defendants.

Case No. 1:25-cv-1127

Hon. Robert J. Jonker
Mag. Phillip J. Green

---

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

### STATEMENT OF FACTS

Plaintiff Megan Moryc joined Michigan State Police (MSP) in March 2016 and was assigned to the Lakeview Post, where male troopers routinely watched pornography on duty and made degrading remarks about women. ECF No. 5, PageID.206-07. MSP also assigned known sexual harasser Trevin Antcliff to supervise her. *Id*. Antcliff repeatedly propositioned Plaintiff while exercising supervisory authority over her, forced her into a relationship, and became increasingly physically and sexually abusive. *Id*.

In February 2020, Plaintiff reported sexual harassment, discrimination, and misconduct to MSP, placing MSP on notice of sex discrimination in the workplace. *Id.* at PageID.207, 264-65. In October 2020, male troopers filed retaliatory complaints against Plaintiff, alleging inappropriate physical and sexual contact during an off-duty gathering because she had reported them. *Id.* at PageID.264-65. MSP investigated and disciplined Plaintiff while failing to impose comparable discipline on men accused of similar conduct. *Id.* at PageID.269. On October 19, MSP removed

Plaintiff from active duty and placed her on administrative leave. *Id.* at PageID.217. MSP stopped paying Plaintiff on January 20, 2021. *Id.* at PageID.216-17, 228, 264-65, 273.

On October 19, 2020, Robert Metivier filed a retaliatory complaint against Plaintiff, alleging that she had falsely accused him of discrimination. *Id*. PageID.264.

MSP stopped paying Plaintiff on January 20, 2021. *Id.* at PageID.216-17, 228, 264-65, 273.

On July 15, 2021, Plaintiff submitted a complaint to Defendant Lisa Gee-Cram alleging years of sex discrimination, sexual harassment, and a hostile work environment; discrimination in training, compensation, promotional opportunities; and workplace misconduct. *Id.* PageID.263. Less than one month later, Defendant Dale Hinz terminated Plaintiff's employment, effective August 9, violating her collective bargaining agreement, which required progressive discipline before termination. *Id.* at PageID.216-17. Plaintiff's union challenged the termination. *Id.* at PageID.217.

On February 3, 2022, an arbitrator reduced Plaintiff's termination to a suspension through May 31, 2021, and ordered reinstatement with back pay beginning June 1, 2021. *Id*. In February 2022, MSP filed a petition to vacate the decision. *Id.* at PageID.217-18. On September 19, the circuit court granted MSP's request and vacated the arbitration award. On October 4, Plaintiff's union appealed. *Id.*

In April 2023, Plaintiff reported Antcliff's domestic and sexual abuse to Defendant Ryan Maki. *Id*. at PageID.223-24. MSP opened criminal and internal investigations. *Id*. Defendant Kandyce Herr conducted the criminal investigation and failed to follow required domestic violence investigative procedures, including preparing the appropriate incident report and providing required victim-rights information. *Id*. at PageID.225-27. MSP failed to investigate Plaintiff's sexual assault allegations. *Id*. at PageID.240.

On August 17, 2023, Ryan Tabaczka interviewed Plaintiff in the internal investigation but focused his questioning on her relationship with Antcliff during her probationary employment in 2016-2017 rather than the reported abuse. *Id.* at PageID.225-26. In September, Bock opened a perjury investigation against Plaintiff due to a voicemail from Antcliff's ex-wife claiming that Plaintiff had testified falsely in the Antcliffs' 2018 divorce. *Id.* at PageID.227-29, 234.

On December 28, 2023, the Michigan Court of Appeals unanimously reversed the circuit court's decision and remanded for enforcement of the original arbitration award. *Id.* at PageID.218.

On or around January 15, 2024, Plaintiff filed an internal complaint against Defendants Herr, Bock, and Tabaczka, alleging that Bock engaged in intimidation and harassment by initiating a malicious criminal perjury investigation and that that Tabaczka and Herr violated MSP policies and state law by failing to follow mandatory reporting and investigative procedures. ECF No. 5, PageID.230.

On April 3, 2024, Plaintiff filed a Michigan Department of Civil Rights (MDCR) complaint against MSP alleging sex discrimination and retaliation. ECF No. 40-1, PageID.1047. On June 23, 2025, the Equal Employment Opportunity Commission (EEOC) issued a Notice of Right to Sue (NRTS). ECF No. 40-2, PageID.1049.

In August 2024, Plaintiff spoke as a private citizen to a WLNS reporter about the corruption, discrimination, retaliation, and misconduct within MSP. *Id.* at PageID.254. WLNS contacted MSP for comment in fall 2024. *Id.*

MSP continued litigating the arbitration decision, and on September 18, 2024, the Michigan Supreme Court denied its application for leave to appeal, reinstating arbitration decision. *Id.* at PageID.217-18; ECF No. 21, PageID.591.

In late September 2024, Herr directed Plaintiff to report to MSP Headquarters for onboarding on October 2. ECF No. 5, PageID.233. When she arrived, Defendant Brian Buege told her "the reporting" had to stop. *Id.* at PageID.233-234. He gave her a letter placing her on paid investigatory suspension due to the investigations stemming from Antcliff's ex-wife's voicemail and Metivier's report against her. *Id.* at PageID.227.

Plaintiff's Michigan Commission on Law Enforcement Standards (MCOLES) certification, required for service as a law enforcement officer, allegedly lapsed during her administrative leave. *Id.* at PageID.238. Although Buege acknowledged that Plaintiff's pending investigations prevented her MCOLES reactivation from proceeding, he nevertheless instructed her to complete the 27-page MCOLES affidavit and undergo a background investigation. *Id.* MSP's failure to allow Plaintiff to perform administrative duties while awaiting activation of her MCOLES license contrasted with how it treated similarly situated men and adversely affected her. *Id.* at PageID.234, 242.

In November 2024, Plaintiff obtained public records revealing new information about MSP's investigations into her complaints and the allegations against her. *Id.* at PageID.263-69. The records corroborated Plaintiff's reports of sex discrimination, including admissions by men that they had viewed pornography while on duty and evidence that supervisors knew of sexual misconduct occurring at the Lakeview Post. *Id.* at PageID.264-65. Plaintiff also discovered that Hinz had closed her complaints as unfounded despite evidence of misconduct by the men she had reported and had negatively analyzed her credibility because she had made prior reports of sex discrimination. *Id*. The records also revealed that Deasy and Gee-Cram had failed to investigate another complaint involving harm to Plaintiff in violation of policy and that MSP had identified

Plaintiff as the source during the 2020 investigation into her complaints against male colleagues, resulting in them filing retaliatory complaints against her. *Id*. at PageID.264-66.

Defendants continued failing to comply with the 2022 arbitration award. On or about November 27, 2024, Gee-Cram contacted the arbitrator, seeking to modify the award to relieve MSP of its continuing compensation obligations. ECF No. 5, PageID.218. On December 18, 2024, MSP notified Plaintiff it planned to terminate her, again without progressive discipline, and the circuit court held a hearing concerning enforcement of the award, and on December 20, the court ruled in Plaintiff's favor, ordering enforcement. *Id*. at PageID.239, 220.

On January 7, 2025, Plaintiff attended a disciplinary conference with Defendants Jason Nemecek and Gee-Cram and notified them that MSP had failed to properly investigate her reports of domestic and sexual abuse. *Id.* at PageID.239-40.

MSP filed a motion seeking relief from the December 20, 2024 judgment, heard on February 12, 2025. *Id.* at PageID.220.

On February 13, 2025, Nemecek upheld Plaintiff's termination. *Id.* at PageID.241. Plaintiff's union challenged the decision. *Id*.

MSP continued delaying Plaintiff's reinstatement and back pay. *Id*. at PageID.240. On May 27, 2025, MSP notified Plaintiff that her back pay was available but withheld approximately $8,500 in health-insurance premiums for coverage she never received. *Id*. at PageID.252-53.

On June 12, 2025, Plaintiff filed an EEOC charge against MSP alleging retaliation between October 1, 2024, and June 12, 2025. ECF No. 40-3, PageID.1053. The EEOC issued a NRTS on July 7. ECF No. 40-4, PageID.1057.

That day, WLNS published a story detailing Plaintiff's allegations against MSP. ECF No. 5, PageID.254-56. MSP then expanded its background investigation into Plaintiff beyond the initial August 2021 to October 2024 scope. *Id.* at PageID.256-57, 260-61.

On July 28, 2025, a second arbitrator overturned Plaintiff's February 13, 2025 termination, finding that MSP had not substantiated its conclusion that she committed perjury, and ordered her reinstated subject to MCOLES licensure. *Id.* at PageID.257-260. MSP continued preventing Plaintiff's return to active duty. *Id.* at PageID.261-62.

## STANDARD OF REVIEW

A motion for judgment on the pleadings under Rule 12(c) is evaluated under the same standard as a motion to dismiss under Rule 12(b)(6). The Court must accept well-pleaded factual allegations as true, construe them in Plaintiff's favor, and determine whether they state a plausible claim for relief. *Brown v. Louisville-Jefferson Cnty. Metro Gov't*, 135 F.4th 1022, 1030 (6th Cir. 2025). The Court may consider administrative complaints and right-to-sue notices without converting the motion into one for summary judgment. *Id.*

At the pleading stage, a Title VII plaintiff is not required to plead facts establishing each element of a *prima facie* case under the *McDonnell Douglas* framework. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002). That rule remains good law after *Twombly* and *Iqbal*; a Title VII complaint survives so long as it provides an adequate factual basis from which a court, drawing on its "judicial experience and common sense," can infer a Title VII violation. *Bar v. Kalitta Charters II, LLC*, No. 21-1739, U.S. App. LEXIS 21412, at *8 (6th Cir. 2022) (citing *Keys v. Humana, Inc.*, 684 F.3d 605, 609-10 (6th Cir. 2012)) (quotes omitted). A plaintiff must ultimately show that (1) she engaged in protected activity, (2) that the defendant knew of it, (3) that the defendant took a materially adverse action, and (4) that a causal connection existed between the

protected activity and that action. *Hubbell v. FedEx SmartPost, Inc.*, 933 F.3d 558, 568 (6th Cir. 2019) (citations omitted).

## ARGUMENT

### I. Plaintiff plausibly establishes sex discrimination under Title VII.

#### A. Count I falls within the scope of Plaintiff's MDCR complaint.

A claim is exhausted when it falls within the scope of the investigation reasonably expected to grow from the administrative charge, assessed from the charge's factual allegations rather than solely from the boxes checked on the form. *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004); *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 732 (6th Cir. 2006). MSP's mischaracterization of Plaintiff's charge as "limited to a single incident on March 16, 2024," ECF No. 40, PageID.1010, ignores the charge itself: Plaintiff filed a sexual-assault complaint, MSP closed the complaint "without thoroughly addressing [her] allegations," "male colleagues who were similarly situated" received thorough investigations of their complaints, and "sex was a factor" in MSP's actions. ECF No. 40-1, PageID.1047. Count I pleads the same theory. MSP "discriminated against [Plaintiff] on the basis of sex…by failing to investigate her reports of sex discrimination, harassment, and abuse." ECF No. 5, PageID.270.

In a deferral jurisdiction like Michigan, a charge is timely as to any discrete act occurring within 300 days of filing. 42 U.S.C. §2000e-5(e)(1). Although discriminatory or retaliatory acts outside that period are not independently actionable merely because they relate to timely conduct, they may provide relevant background evidence. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113-15 (2002); *Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003). Historical allegations provide context for MSP's treatment of Plaintiff, her complaints, and its disparate treatment of her in the investigation process. They do not transform those events into separate Title VII claims, and MSP identifies no basis for treating them as such.

**B. Plaintiff was MSP's employee during the relevant period.**

Discharging or otherwise discriminating against any individual regarding the compensation, terms, conditions, or privileges of employment because of sex is an unlawful employment practice. 42 USC §2000e-2. Title VII's protections attach once a contractual relationship of employment is established. *Hishon v. King & Spalding*, 467 U.S. 69, 74 (1984).

Plaintiff started working for MSP in March 2016. ECF No. 5, PageID.215. Although MSP removed Plaintiff from active duty on October 19, 2020, and terminated her on August 9, 2021, she challenged termination through her union's grievance process. *Id*. at PageID.217. On February 3, 2022, an arbitrator ordered her reinstated with back pay. *Id.* MSP sought to vacate that decision. *Id.* Although the circuit court initially granted vacatur, the Michigan Court of Appeals reversed on December 28, 2023, and the Michigan Supreme Court denied MSP leave to appeal on September 18, 2024. *Id.* at PageID.218.

Plaintiff does not contend that she continuously performed active law-enforcement duties or received regular compensation throughout the ensuing litigation. The Amended Complaint alleges that Plaintiff had received no income from MSP starting on January 20, 2021. *Id.* at PageID.228. Plaintiff's position rests on the retrospective effect of the arbitration remedy. By replacing termination with suspension and directing reinstatement and back pay, the arbitration award established employment-related rights extending into the disputed period of August 17, 2023 to March 16, 2024. These allegations, taken as true in the light most favorable to Plaintiff, establish an existing employment relationship during the relevant period. Because Plaintiff remained entitled to pay and benefits during this period, she continued to receive "terms, conditions, or privileges" of employment under Title VII. *Hishon v. King & Spalding*, 467 U.S. 69, 75 (1984).

Defendants provide no authority supporting their position that an employee on administrative leave, or one whose employment was judicially reinstated to cover the relevant period, falls outside Title VII's coverage. Whether Plaintiff's employment status is characterized as current or former, and whether it was interrupted, presents a question that cannot be resolved against Plaintiff on the pleadings. *Baker v. Ferris State Univ.,* 516 F. Supp. 3d 735, 740 (W.D. Mich. 2021).

### C. MSP's failure to investigate Plaintiff's complaints is an adverse employment action.

Defendants contend that MSP's failure to investigate cannot constitute an adverse employment action because an adverse action "requires 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" ECF No. 40, PageID.1012 (quoting *Bilyeu v. UT-Battelle, LLC*, 154 F.4th 396, 403 (6th Cir. 2025)). That is an inaccurate statement of law and an incorrect reading of *Bilyeu.* In *Muldrow v. City of St. Louis,* the Supreme Court rejected the "materially adverse" test for substantive discrimination claims that Defendants try to apply here. 601 U.S. 346, 355 (2024). In *Bilyeu*, the Sixth Circuit explained that "the Supreme Court overruled the materially adverse standard in *Muldrow v. City of St. Louis*," and thereby "eliminated the 'material' requirement that lower courts had added to the prerequisite of an adverse employment action." 154 F.4th at 404.

In *Muldrow*, the Court held that a Title VII plaintiff challenging a discriminatory employment action does not need to show that the harm was significant, serious, or substantial, but only "some harm respecting an identifiable term or condition of employment." 601 U.S. at 354-55. The Sixth Circuit has applied that standard, confirming that an employment action is adverse so long as it leaves the employee "worse off respecting employment terms or conditions."

*McNeal v. City of Blue Ash*, 117 F.4th 887, 900 (6th Cir. 2024). Defendants' insistence that Plaintiff allege a "significant," "serious," or "substantial" harm thus seeks to revive precisely the heightened-harm requirement *Muldrow* rejected.

Under the correct standard, the relevant question is whether MSP's sex-based disparity in handling Plaintiff's complaint left her worse off as to a term or condition of her employment. It did. Plaintiff repeatedly reported sexual assault, sexual harassment, and retaliation against other MSP employees that Defendant failed to investigate properly, if at all. ECF No. 5, PageID.227-31, 236-38, 263-69. Antcliff was never investigated for sexually assaulting Plaintiff. ECF No. 5, PageID.224, 267. Plaintiff's reports of sex discrimination were ignored merely because she had made a similar report previously. *Id.* at PageID.264. While ignoring Plaintiff's complaints of domestic and sexual assault, MSP opened investigations into Plaintiff based on a voicemail from her abuser's jilted ex-partner and a retaliatory complaint against her from a male colleauge she reported for sex discrimination. *Id.* at PageID.227, 236.

Defendants' reliance on *Bryant* for the proposition that a failure to investigate is not an adverse action is misplaced. *Bryant* addressed a standalone statutory claim—Count IV: "Failure to Investigate, Prevent, and/or Remedy Harassment"—and recommended dismissal only because "neither Title VII nor the ELCRA creates such a cause of action." *Bryant v. Ally Fin.*, No. CV-24-13371, 2026 WL 1045670, at *13 (E.D. Mich. Jan. 7, 2026) (slip op.). Plaintiff asserts no such freestanding claim. Count I is a sex-discrimination claim under §2000e-2 in which MSP's refusal to investigate her complaint—while thoroughly investigating comparable complaints from men—is itself the disparate treatment. *Bryant* did not hold that sex-based disparate handling of complaints is non-actionable; it held only that "failure to investigate" is not an independent cause of action.

Defendants' reliance on *Fincher v. Depository Trust & Clearing Corporation* fares no better, because *Fincher* applied the retaliation standard, not the discrimination standard governing Count I. 604 F.3d 712, 716 (2d Cir. 2010). There, the court held that an employer's failure to investigate a discrimination complaint is not, standing alone, an adverse employment action for purposes of a retaliation claim. *Id.* at 722. *Fincher* asks whether the challenged action was materially adverse: would it dissuade a reasonable worker from making or supporting a charge of discrimination? *Id.* (citing *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006)). That retaliation framework is distinct from the substantive discrimination standard at issue here, which the Supreme Court made clear in *Muldrow* does not require a showing of material adversity.

*Fincher* itself rejected the categorical rule Defendants urge, recognizing that a failure to investigate may constitute an adverse action when undertaken "in retaliation for some separate protected act by the plaintiff." 604 F.3d at 722. Plaintiff alleges precisely that. MSP failed to investigate her legitimate reports of legal, criminal, and policy violations after she had engaged in protected activity and been subject to retaliation, even though multiple high-level MSP officials knew of her allegations. ECF No. 5, PageID.250. Meanwhile, MSP investigated Plaintiff for perjury due to testimony she gave in her abuser's 2018 divorce proceedings, even though her testimony complied with her MSP training to answer questions succinctly without volunteering information while under oath. *Id*. at PageID.258. Arbitrator Barnes concluded that "she did not answer any question untruthfully." *Id*. MSP also failed to investigate Plaintiff's complaint against Antcliff despite prior reports of domestic violence against him. *Id.* at PageID.267. Taken as true, the alleged sex-based disparity plausibly caused harm to Plaintiff's terms and conditions of employment. Whether the evidence ultimately proves that theory cannot be resolved on the pleadings.

## II. PLAINTIFF'S ALLEGATIONS PLAUSIBLY ESTABLISH RETALIATION UNDER TITLE VII.

### A. Count II falls within the scope of Plaintiff's EEOC charge, and exhaustion is a non-jurisdictional claims-processing rule.

MSP's attack on Count II rests on two flawed premises. First, it treats the charge-filing requirement as jurisdictional and reads the charge narrowly to argue Count II exceeds its scope. Second, it recasts Plaintiff's historical allegations as discrete, untimely acts—conflating background context with the timely, independently actionable retaliation Plaintiff pleads. Count II is both exhausted and timely.

Defendants' exhaustion objection presents a nonjurisdictional claim-processing defense, not a challenge to subject-matter jurisdiction. Title VII's charge-filing requirement is a mandatory claims-processing rule. *Fort Bend Cnty. v. Davis*, 587 U.S. 541, 550-51 (2019). Moreover, the scope of suit is not confined to the charge's precise wording; a charge suffices if it describes generally the action or practices complained of. 29 C.F.R. §1601.12. MSP invokes *Younis v. Pinnacle Airlines* to argue that a plaintiff cannot sue on a claim she never raised, ECF No. 40, PageID.1009, but *Younis* cuts the other way: when facts related to the charged claim would prompt the EEOC to investigate a different uncharged claim, a plaintiff is not precluded from bringing suit on that claim. 610 F.3d 359, 362 (6th Cir. 2010) (*see also Dixon*, 392 F.3d at 217).

Defendants' own Motion acknowledges the substantial overlap between Plaintiff's EEOC retaliation charge and Count II. Specifically, MSP concedes that, "[a]lbeit not verbatim, [Plaintiff's] EEOC charge was limited to the four alleged actions" pleaded in Count II: withholding backpay, initiating false investigations, refusing to return Plaintiff to work, and making false statements in proceedings. ECF No. 40, PageID.1014; ECF No. 5, PageID.271-72. Plaintiff's charge encompasses the same four categories of retaliatory conduct alleged in Count II. It alleges protected reports beginning "in approximately 2020" and identifies retaliation that "includes but

is not limited to" those four categories of conduct. ECF No. 40-3, PageID.1053. Thus, this is not an attempt to litigate an unexhausted theory; the charge identified both the protected activity and the pleaded conduct. Any residual scope dispute is fact-bound and cannot be resolved on the pleadings.

**B. Historical allegations are not separate, untimely acts.**

Count II rests on discrete acts within the charge window—MSP's continued refusal to return Plaintiff to duty, its withholding of backpay, the MCOLES-related investigation, and the second termination and its aftermath. Those acts remain independently actionable regardless of earlier retaliation; timeliness turns on when the challenged conduct occurred, not when the dispute began. *See Morgan*, 536 U.S. at 110-14. Moreover, where earlier discrete acts are not independently actionable, they may remain relevant as "background evidence in support of a timely claim." *Id.* at 113. Plaintiff's earlier complaints, investigations, and treatment provide context for MSP's subsequent retaliatory conduct, including evidence relevant to its knowledge, motive, and the relationship between Plaintiff's protected activity and its challenged actions. Their inclusion does not render the timely allegations unexhausted.

To the extent Count II is read to seek independent liability for discrete retaliatory acts that occurred more than 300 days before the June 12, 2025 charge and that are not fairly encompassed by the charge, those discrete acts are not independently actionable. *Id.* That concession is narrow: such acts remain fully available as "background evidence in support of a timely claim," *id.*, and it does not reach the timely adverse acts—the refusal to reinstate, the withholding of back pay, the conduct of the MCOLES-related investigation, the second termination, and MSP's litigation conduct—on which Count II principally rests.

**C. Plaintiff engaged in protected activity.**

Title VII's anti-retaliation provision makes it unlawful to discriminate against an employee because she "has opposed any practice made . . . unlawful" by the statute (the opposition clause) or because she has "made a charge, testified, assisted, or participated" in a Title VII proceeding (the participation clause). 42 U.S.C. §2000e-3(a). The opposition clause is construed broadly: communicating to an employer a belief that it has engaged in employment discrimination ordinarily constitutes protected opposition, and an employee need not initiate a complaint for the clause to apply. *Crawford v. Metro. Gov't of Nashville & Davidson Co.*, 555 U.S. 271, 276-77 (2009). The "only qualification" on opposition activity is "that the manner of . . . opposition must be reasonable." *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 721 (6th Cir. 2008) (citing *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 580 (6th Cir. 2000)).

Plaintiff's complaints of sex discrimination and harassment, together with filing MDCR and EEOC complaints, constitute quintessential Title VII protected activity. Defendants' contention that her April 2023 report cannot be protected because she was not an MSP employee misstates the law. The Supreme Court has held that the term "employees" in Title VII's anti-retaliation provision includes former employees, so post-employment reprisal connected to the reemployment relationship is actionable. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997). Plaintiff's status between terminations does not strip her reports of protection, particularly given Defendants' admission that MSP opened investigations into her April 2023 complaint. ECF No. 22, PageID.646.

**D. The pleaded acts are materially adverse under the retaliation standard.**

The retaliation standard for adverse action is markedly broader than the "adverse employment action" standard governing substantive discrimination claims. A plaintiff need only show that the challenged action "well might have dissuaded a reasonable worker from making or

supporting a charge of discrimination." *Burlington*, 548 U.S. at 68 (internal citations omitted). The Supreme Court rejected the view that actionable retaliation is limited to conduct affecting the terms, conditions, or status of employment. *Id.* at 67. The Sixth Circuit applies that materially-adverse standard to retaliation claims. *Laster v. City of Kalamazoo*, 746 F.3d 714, 731-32 (6th Cir. 2014) ("This more liberal definition permits actions not materially adverse for purposes of an anti-discrimination claim to qualify as such in the retaliation context.") (Citing *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 597 (6th Cir. 2007)).

Prolonged administrative leave and refusal to return an employee to duty can satisfy this standard. The Sixth Circuit has treated paid administrative leave, coupled with a performance plan, as meeting the relatively low bar for a materially adverse action. *Michael*, 496 F.3d at 596. More recently, it reversed dismissal of a retaliation claim premised on more than a year of paid administrative leave, holding that such an allegation plausibly alleges an adverse action under the *Burlington* standard. *Jaleelah Hassan Ahmed v. Hamtramck Pub. Schs.*, 178 F.4th 975, 982-83 (6th Cir. 2026).[1] Here, Plaintiff alleges that she was reinstated only to be placed on indefinite suspension and never returned to duty, a materially adverse action that a reasonable worker could find dissuasive.

Withholding pay is likewise materially adverse. The Sixth Circuit has held that termination and related loss of income constitutes a materially adverse action even where the employee is later reinstated with back pay, reasoning that "[m]any reasonable employees would find a month without a paycheck to be a serious hardship." *Randolph v. Ohio Dep't of Youth Svcs.*, 453 F.3d 724,736-37 (6th Cir. 2006) (citing *Burlington*, 548 U.S. at 72). Plaintiff's second termination and

[1] The Sixth Circuit affirmed that "the standard for showing an adverse employment action is the same in the FMLA retaliation and Title VII retaliation contexts." *Redlin v. Grosse Point Pub. Sch. Sys*., 921 F.3d 599, 616 (6th Cir. 2019).

MSP's withholding of compensation fall squarely within that principle. Whether any act rises to the level of material adversity is a context-specific, fact-intensive inquiry that generally cannot be resolved on the pleadings. *Burlington*, 548 U.S. at 69 ("Context matters.").

### E. MSP's litigation conduct constitutes actionable retaliation.

Courts in this Circuit have recognized that an employer's litigation conduct may constitute adverse action for retaliation purposes under Title VII. *Gliatta v. Tectum Inc.*, 211 F. Supp. 2d 992, 1008-09 (S.D. Ohio 2002) (filing a counterclaim against a former employee can constitute a materially adverse action). That conclusion follows from the broad definition of adverse action and the recognition that the anti-retaliation provision is not limited to conduct affecting employment terms. *Id.*

This Court has endorsed the related principle that filing a lawsuit against a former employee without reasonable basis in fact or asserting claims in bad faith with retaliatory motive can constitute actionable retaliation. *Cruz v. Don Pancho Mkt., LLC*, 167 F. Supp. 3d 902, 911-12 (W.D. Mich. 2016). At the pleading stage, Plaintiff's allegation that MSP made knowingly false statements in the state court proceeding to defeat her reinstatement and back pay states a plausible theory of materially adverse litigation conduct, and whether MSP's positions were taken in good faith is a factual question that cannot be resolved at this stage.

### F. Plaintiff's back-pay theory is not defeated by judicial estoppel on the pleadings.

MSP contends that judicial estoppel bars Plaintiff's back-pay theory because a state court entered an order reflecting that it owes her nothing further under the 2022 arbitration award. Judicial estoppel, however, is a narrow equitable doctrine. It applies only where a party takes a later position clearly inconsistent with one it asserted under oath in a prior proceeding, a court adopted the earlier position, and the party would gain an unfair advantage if not estopped. *General*

*Conf. Corp. v. McGill*, 617 F.3d 402, 414 (6th Cir. 2010) (citing *Lorillard Tobacco Co. v. Chester, Willcox & Saxbe, LLP*, 546 F.3d 752, 757 (6th Cir. 2008)). The doctrine "is applied with caution to avoid impinging on the truth-seeking function of the court," *Lorillard*, 546 F.3d at 757 (citing *Teledyne Indus., Inc. v. Nat'l Labor Relations Board*, 911 F.2d 1214, 1218 (6th Cir. 1990)), and "at a minimum, a party's later position must be clearly inconsistent with its earlier position." *Id.* (citing *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001)) (cleaned up).

Those elements are not established on the face of the pleadings. Judicial estoppel cannot apply unless a party successfully asserted the inconsistent position in the prior proceeding, and where the prior matter resolves by settlement rather than "having a judicial body adopt his initial position," the position has not been successfully asserted. *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 600 (6th Cir. 1982). Success requires that the party persuaded the first court to accept its position, and absent such success, "a party's later inconsistent position . . . poses little threat to judicial integrity." *Bakery, Confectionery, Tobacco Workers & Grain Millers Int'l Union v. Kellogg Co.*, 904 F.3d 435, 441 (6th Cir. 2018) (citing *New Hampshire*, 532 U.S. at 751 (quotations and citations omitted)). Further, Plaintiff's union, not Plaintiff, advanced positions in the arbitration enforcement litigation. ECF No. 5, PageID.218. Plaintiff was not a party to that matter and therefore could not have taken a judicially adopted position.

The posture of arbitration reinforces the point. Submitting a grievance to arbitration does not preclude an employee from later pursuing a Title VII claim, and issues not actually raised and decided in the grievance are not precluded. *Gomez-Mesquita v. City of Detroit*, No. 06-12844, 2007 U.S. Dist. LEXIS 56110, *12-14 (E.D. Mich. 2007). Here, the state court order did not adjudicate Plaintiff's Title VII retaliation claim or the additional adverse actions alleged in her

EEOC charge. Accordingly, the order does not extinguish that claim merely because it may affect the relief available for her earlier termination.

**G. MCOLES licensure status does not justify MSP's refusal to reinstate.**

MSP argues that it could not return Plaintiff to duty because her law enforcement license had lapsed under the MCOLES statute. Employment of a Michigan law enforcement officer is subject to the licensing requirements and procedures of M.C.L. 28.609(1), and a license may be rendered inactive or lapsed based on breaks in service. M.C.L. 28.609(10)-(11). The implementing rules prescribe how an employing agency activates or reactivates an officer's license. Mich. Admin. Code R. 28.14205.

Those authorities establish a licensing framework, but they do not establish, as a matter of law on the pleadings, that MSP's refusal to return Plaintiff to duty was non-retaliatory. Plaintiff alleges that MSP prevented her license from being reactivated while investigations it controlled remained open, treated her differently from a similarly-situated man, and retaliated against her in the reactivation process. Whether compliance with the MCOLES statute genuinely compelled MSP's action or instead served as a pretextual vehicle for retaliation is a factual question that cannot be resolved at this stage.

**H. The Amended Complaint plausibly alleges causation.**

Title VII retaliation claims are governed by but-for causation, requiring proof that retaliation would not have occurred absent the employer's wrongful action. *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). The standard applies to retaliation claims specifically, as distinguished from the mixed-motive standard used in status-based discrimination claims. *Id.* at 347-48. But-for causation is a merits standard of proof, not a heightened pleading requirement. As set out in the Standard of Review, *supra*, Plaintiff need only

plead an adequate factual basis from which a violation can be inferred, and that pleading standard applies with equal force to causation. *Kalitta Charters,* 2022 U.S. App. LEXIS 21412 at *14 (citation omitted).

Causation may be shown through close temporal proximity between protected activity and adverse action, and where the two are close in time, proximity alone can establish causation for a *prima facie* case. *Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 776-77 (6th Cir. 2018) (citing *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) and *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 283-84 (collecting cases holding that a two- to three-month time lapse constitutes sufficient temporal proximity)). Where more time elapses, a plaintiff "must couple temporal proximity with other evidence of retaliatory conduct." *Redlin*, 921 F.3d at 615 (citing *Mickey*, 516 F.3d at 525).

Here, Plaintiff does not rely on temporal proximity alone. She alleges a sustained pattern of adverse acts following each instance of protected activity—including the suspension imposed immediately following her 2024 reinstatement, her February 2025 termination, and the expansion of the background investigation beyond its stated scope after she spoke out publicly against MSP—together with direct indicia of retaliatory intent. That combination of proximity and additional evidence of retaliatory conduct suffices to plead but-for causation. *Redlin*, 921 F.3d at 615-16.

## III. PLAINTIFF'S SUBSTANTIVE DUE PROCESS CLAIM IS SUFFICIENTLY PLEAD.

### A. The claim is timely.

Defendants assert that Plaintiff's substantive due process claim should be dismissed as time-barred. ECF No. 40, PageID.1026-27. They have not established this affirmative defense as a matter of law. Rule 12 motions are generally "inappropriate vehicle[s] for dismissing a claim based upon the statute of limitations." *JRS Partners, GP v. Leech Tishman Fuscaldo & Lampl, LLC*, No. 23-5538, 2024 WL 2874575, *3 (6th Cir. Jun 7, 2024) (quotes and citations omitted).

Because limitations is an affirmative defense, Defendants bear the burden of establishing that the limitations period has expired. *Campbell v. Grand Trunk W. R.R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001). Dismissal at the pleading stage is appropriate only when untimeliness is apparent from the face of the complaint. *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 520 (6th Cir. 2008) (citation omitted). In other words, dismissal based on statute of limitations under a Rule 12 motion is only appropriate where a defendant demonstrates that "the undisputed facts conclusively establish [the] affirmative defense as a matter of law." *Est. of Barney v. PNC Bank, Nat'l Ass'n,* 714 F.3d 920, 926 (6th Cir. 2013).

For a §1983 claim, the Sixth Circuit applies the relevant state's statute of limitations for personal injury torts, *Beaver St. Invs., LLC v. Summit Cnty.*, 65 F.4th 822, 826 (6th Cir. 2023), which in Michigan is three years. M.C.L. 600.5805(2). The statute of limitations begins to run "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Ratté v. Corrigan*, 989 F. Supp. 2d 550, 562 (E.D. Mich. 2013) (quote and citation omitted). Thus, courts consider "when the harm in question occurred, guided by the principle that '[a] plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence.'" *Ratté*, 989 F. Supp. 2d at 562 (quoting *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984)).

Defendants contend that Count III is untimely because Antcliff was assigned to supervise Plaintiff in 2016 and has not worked at the Lakeview Post since her October 2020 suspension. ECF No. 40, PageID.1026-27. However, neither date, standing alone, conclusively establishes accrual. Count III alleges a course of conduct involving the 2016 assignment, Plaintiff's April 2023 domestic abuse report, subsequent investigations, an arbitration decision, and later disclosures concerning MSP's knowledge and investigative practices. ECF No. 5, PageID.206-07, 224-30,

257, 263-69, 273-75. The timeliness of these allegations must be assessed considering the constitutional injury and when it accrued.

The 2016 assignment does not establish when Plaintiff knew or reasonably should have known that MSP had knowingly assigned her supervision to a known abuser. MSP assigned Antcliff despite his known misconduct toward women, of which she was initially unaware. ECF No. 5, PageID.206, 274. In 2024, Plaintiff obtained public records concerning MSP's knowledge and handling of sexual harassment complaints, and a 2025 arbitration decision found "the Department clearly did not pursue the facts regarding [Plaintiff] being placed with Officer Antcliff at the beginning of her training since it was well known in the Department that he was a womanizer." *Id.* at PageID.257, 263-69. Defendants have not demonstrated that the allegations establish, as a matter of law, that Plaintiff knew or reasonably should have known of MSP's role in exposing her to potential harm by assigning Antcliff as her supervisor until September 21, 2022. *See Sevier*, 742 F.2d at 273.

Further, Plaintiff's October 2020 suspension does not establish that all conduct challenged in Count III occurred outside of the statute of limitations period. Although Plaintiff was no longer working at the Lakeview Post after October 2020, Count III also challenges Defendants' failure to adequately investigate and respond to her complaints of sex discrimination. ECF No. 5, PageID.273-75. Plaintiff reported Antcliff's abuse in April 2023, prompting inadequately conducted investigations. *Id.* at PageID.224-30. These investigative failures concern conduct within the limitations period that Defendants' reliance on Plaintiff's suspension does not address. Thus, it is not clear on the face of the Amended Complaint that this claim is time-barred.

### B. The claim should proceed on the merits.

Generally, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Lipman v. Budish*, 974 F. 3d 726, 741 (6th Cir. 2020) (citing *DeShaney v. Winnebago Cnty. Dep't of Social Servs.*, 489 U.S. 189, 197 (1989)). However, under the state-created danger doctrine, applicable here, the state may be liable for private violence when "it acts to create or increase the danger of private harm." *Id.* at 742 (citing *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066-67 (6th Cir. 1998); *Butera v. District of Columbia,* 235 F.3d 637, 48-49, 49 n.10 (D.C. Cir. 2001) (collecting cases)).

Plaintiff's claim fits squarely under the state-created danger theory. Defendants' "failure to address and properly respond to complaints about Antcliff's sex discrimination, harassment, and abuse of prior victims" and subsequent decision to place Plaintiff under Antcliff's supervision despite "knowing that he had a history of abusing women, led directly to [Plaintiff's] being victimized by Antcliff's sexual assault, abuse, stalking, and molestation." ECF No. 5, PageID.273. Count III describes Defendants' failure to "adequately investigate" Plaintiff and other victims' complaints of sex discrimination by Antcliff and other men. It asserts that Defendants' policy of inadequate screening, supervision, and discipline of Antcliff and other abusive men deprived Plaintiff of her constitutional right to bodily integrity, increasing her risk of harm. *Id.* at PageID.274.

Defendants do not argue that the claim is inadequately plead under the state-created danger theory. Instead, they rely solely on the fact that the Court previously dismissed a separate count—Count VI—of the Amended Complaint entitled "State Created Danger" in its Order addressing Defendants' Motion to Dismiss under Rule 8. ECF No. 40, PageID.1032; ECF No. 21, PageID.607. Plaintiff's Amended Complaint contained two Fourteenth Amendment claims: Count III: Violation of the Right to Substantive Due Process—Bodily Integrity and Count VI: State Created Danger.

In dismissing Count VI under Rule 8, this Court held that the claim was not plead with sufficient clarity because the Amended Complaint did not contain factual allegations suggesting that the named Defendants were involved in the decision to place Plaintiff under Antcliff's supervision. ECF No. 21, PageID.607. At the same time, the Court found that Count III did not run afoul of Rule 8, and that the allegations contained therein gave the named Defendants adequate notice. *Id.* at PageID.604-06.

Though Counts III and VI (dismissed) both allege Fourteenth Amendment claims, the nature of the allegations under each Count differ, as does each count's list of named Defendants. Count VI is focused solely on the decision to place Plaintiff under the supervision of a known abuser; Count III is broader and based both on Defendants' failure to respond to prior reports of Antcliff's abuse and policy of failing to adequately respond to sex discrimination reports and assigning Plaintiff to Antcliff's supervision.

Because the Court's dismissal of Count VI was based on Rule 8 concerns as to the Defendants listed, Plaintiff's substantive due process claim under Count III survives. Regarding Count VI, the Court dismissed the claim because it found no factual allegations alleged against three of the Defendants (Sweeney, Davis, and Ziesman) and no factual allegations suggesting that the fourth Defendant (Hinz), was involved in the decision to place Plaintiff under Antcliff. *Id.* at PageID.607. This limited ruling under Rule 8 does not restrict Plaintiff from proceeding under a state-created danger theory under Count III against the listed Defendants who remain in the case (Gee-Cram, Nemecek, Herr, Deasy, Bock, Buege, and Maki). Further, Count III also states a claim against Hinz because the allegations under Count III are broader—encompassing Defendants' policy of failing to adequately respond to sex discrimination reports. ECF No. 5, PageID.273-74.

The Amended Complaint contains ample factual allegations related to Hinz's inadequate response to Plaintiff's sex discrimination complaints. PageID.264-65, 269.

Defendants do not independently challenge the sufficiency of Count III under the state-created danger doctrine. Instead, they rely on the Court's previous dismissal of Count VI without establishing that the pleading deficiencies identified in that count also apply to Count III. That reliance is insufficient to establish entitlement to judgment on the pleadings. *See Brown*, 135 F.4th at 1030; *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

## IV. Plaintiff's Equal Protection claim is properly plead.

### A. The claim is timely.

As outlined in Section III.A, *supra*, Defendants bear the burden of establishing that this claim is time-barred. The claim is subject to a three-year statute of limitations, which begins to run when Plaintiff knew or should have known of the alleged injury.

Defendants argue that Plaintiff would have been aware of her injury in 2021, when Antcliff began abusing her. ECF No. 40, PageID.1031. However, the relevant harm is Defendants' failure to properly respond to Plaintiff's complaints, not Antcliff's abuse itself. Plaintiff filed her first sex discrimination complaint in February 2020. ECF No. 5, PageID.216. In October 2020, the men about whom she had filed the complaint filed a retaliatory "horseplay" complaint against her, leading to an investigation resulting in her termination in August 2021. *Id.* Based on this timeline, Defendants assert that Plaintiff's claim is barred to the extent that it is based on her termination. ECF No. 40, PageID.1031. However, this argument ignores that Plaintiff did not learn that the "horseplay" complaint was retaliatory and that Hinz knew of sex discrimination against her until November 2024. ECF No. 5, PageID.216, 264-65.

Finally, Defendants make no argument that Plaintiff's equal protection claim based on their inadequate response to her complaint of sex discrimination against Antcliff was filed outside of

the statute of limitations. Plaintiff filed that complaint in April 2023. *Id.* at PageID.224. Accordingly, it is not clear on the face of the Amended Complaint that these claims are time-barred.

**B. The claim is adequately plead.**

The Equal Protection Clause prohibits discrimination that "burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." *Rodingo, LLC v. Twp. of Richmond*, 641 F.3d 673, 682 (6th Cir. 2011). Thus, equal protection claims must allege that defendants treated a similarly situated party better than they treated a plaintiff. *Wymer v. Richland Co. Children Servs.*, 584 F. App'x 283, 284 (6th Cir. 2014). "The [C]lause is 'essentially a direction that all persons similarly situated be treated alike.'" *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 864 (6th Cir. 2012) (quoting *City of Cleburne v. Cleburn Living Ctr.*, 473 U.S. 432, 439 (1985)).

As noted *supra* in Section IV.A, Plaintiff's claim is based on Defendants' failure to properly respond to her complaints as compared to similar complaints filed by men. ECF No. 5, PageID.278-80. Defendants pursued internal and criminal investigations against Plaintiff regarding the retaliatory "horseplay" complaint, which ultimately resulted in her termination, without going through progressive discipline, while ignoring her complaints against those same employees and failing to launch a criminal investigation into any of the serious sexual assault allegations made against a man. *Id.* at PageID.216-17, 232. Sex-based animus can also be inferred by the timing of the investigation after Plaintiff filed her complaint, Defendants' extreme response, and the 2022 arbitration decision citing the "disparate use of progressive discipline" against Plaintiff to overturn her termination and award back pay. *Id.* at PageID.217.

Defendants failed to properly investigate Plaintiff's complaint against Antcliff, assigned a biased investigator, and launched a retaliatory investigation against her. *Id.* at PageID.224-25, 227,

230. Buege told Plaintiff the reporting had to stop in the same meeting he told her she was being suspended. *Id*. at PageID.233-34. Defendants did not take Plaintiff's complaints seriously, but her male colleagues' comparable complaints resulted in a criminal investigation and her termination. *Id.* at PageID.269. Defendants allowed a man whose MCOLES license had lapsed to continue working, despite accusations of felonious assault, stalking, and harassment, but denied Plaintiff, accused only of perjury, the same. *Id*. at PageID.242. Taken as true and viewed in the light most favorable to Plaintiff, these allegations adequately allege an equal protection violation and demonstrate that Defendants treated Plaintiff, a woman, worse than men. ("Courts do not demand exact correlation in the similarly situated analysis but instead seek relevant similarity." *Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000.)).

Defendants further argue that Plaintiff fails to differentiate among the individual defendants by referring collectively to "Defendants" under Count IV. ECF No. 40, PageID.1034. This Court previously considered that organizational objection in its March 6, 2026, Opinion and Order. After dismissing defendants against whom it found the Amended Complaint alleged insufficient personal involvement, the Court determined that the remaining pleading was not fatally defective merely because it employed collective references and concluded that group pleading did not constitute an independent basis for dismissal. ECF No. 21, PageID.604-06. That ruling confirms that collective terminology, standing alone, does not warrant dismissal where the incorporated factual allegations adequately identify the conduct attributable to particular individuals.

The Amended Complaint identifies specific actions by individual officials. Plaintiff alleges that Hinz rejected her complaints and participated in her termination; Herr investigated her complaints against Antcliff and failed to investigate her sexual-assault allegations; Bock initiated the perjury investigation; and Deasy closed her complaint against Bock with insufficient

investigation. ECF No. 5, PageID.22-31, 260-65. It also alleges specific conduct by Maki, Nemecek, Gee-Cram, and Buege related to her complaints, disciplinary proceedings, reinstatement, and employment-related treatment. *Id.* at PageID.223-27, 227, 233-34, 238-39, 240-41, 236-66. These allegations must be evaluated according to each official's own conduct and the alleged connection between that conduct and sex-based disparate treatment.

Defendants cannot obtain dismissal merely by repeating an organizational objection the Court previously rejected. *See Moody v. Mich. Gaming Control Bd.*, 871 F.3d 420, 425 (6th Cir. 2017) (the law of the case doctrine precludes reconsideration of issues explicitly or implicitly decided at an earlier stage of the same case); *Entm't Prods., Inc. v. Shelby Cnty.*, 721 F.3d 729, 742 (6th Cir. 2013) ("We generally will not disturb these [holdings] unless there is '(1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice."). Count IV's substantive sufficiency must be determined by examining the factual allegations, their relationship to the claimed constitutional injury, and the reasonable inferences arising from the pleadings. The allegations concerning intentional disparate treatment warrant denial of judgment on the pleadings to the extent they plausibly establish each defendant's personal participation in the asserted constitutional violation.

## V. Plaintiff's First Amendment retaliation claim is properly plead.

### A. Plaintiff's communications with WLNS constitute protected speech.

"[P]ublic employees do not surrender all First Amendment rights by reason of their employment;" the "First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). A public employee's speech is protected if "(1) he spoke as a private citizen rather than pursuant to his official duties; (2) his speech involved a matter of public concern; and (3) his

speech interest outweighs 'the interest of the State, as an employer," in efficient operations. *Barton v. Neely*, 114 F.4th 581, 588 (6th Cir. 2024) (citations omitted).

The Supreme Court's long-standing holding that, "absent proof of false statements knowingly or recklessly made," statements by public employees on "issues of public importance may not furnish the basis for [] dismissal" is found in *Pickering v. Board of Education*. 391 U.S. 563, 574 (1968). The Sixth Circuit has repeatedly held it clearly established that a public employer "may not retaliate against an employee for her exercise of constitutionally protected speech," and whether such a "claim is clearly established at the pleadings stage rises and falls with whether the claim was sufficiently alleged." *Myers v. Centerville, Ohio*, 41 F.4th 746, 766 (6th Cir. 2022) (quotes omitted).

That principle has been applied squarely to facts like these. In *Ashford v. University of Michigan*, the court held that an employee who spoke to a reporter about a public institution's mishandling of a sexual-assault matter engaged in protected speech and that "[r]easonable officers should have known that penalizing [plaintiff] for doing so" violated clearly established First Amendment rights. 89 F.4th 960, 971, 975-76 (6th Cir. 2024).

Defendants ask this Court to dismiss this claim, but their own Motion concedes the dispositive point. They expressly "accept[] the complaint's characterization of her interview as protected speech." ECF No. 40, PageID.1035. Likewise, the Amended Complaint alleges that Plaintiff spoke to the press "as a private individual on a matter of public interest," and that her statements were not made within the course of her employment duties. ECF No. 5, PageID.281. Communications with media about corruption and the mishandling of sex discrimination complaints within a large statewide agency tasked with keeping its citizens safe constitutes quintessential private speech on matters of public concern.

**B. The *Pickering* balancing and protected-status questions are generally unsuited to resolution on the pleadings.**

Whether speech is protected requires a context-specific balancing that "[i]n many cases …cannot be performed" absent factual development. *Handy-Clay v. City of Memphis*, 695 F.3d 531, 545 (6th Cir. 2012) (citing *Perry*, 209 F.3d at 607). At the pleadings stage, allegations of close temporal proximity and decision-maker awareness can suffice, with causation tested after discovery, because defendants generally cannot establish a non-retaliatory justification without "some factual discovery." *Id.* (citing *Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist.*, 428 F.3d 223, 231 (6th Cir. 2005). The Sixth Circuit has confirmed that even the *Pickering* balancing test and the clearly-established inquiry can be resolved for a plaintiff at the pleadings stage when the retaliation claim is adequately alleged. *Myers*, 41 F.4th at 765-66.

Defendants' central argument is that no individual Defendant is alleged to have known of Plaintiff's WLNS communications before taking the challenged actions, and that the July 7, 2025 publication postdated the principal decisions. Causation in a retaliation claim may be shown by knowledge coupled with "temporal proximity" or by other circumstantial evidence, such as the timing of events or "disparate treatment of similar individuals;" where more time elapses, the plaintiff supplements proximity with "other evidence of retaliatory conduct." *Gaspers v. Ohio Dep't of Youth Servs.*, 648 F.3d 400, 412 n.15 (6th Cir. 2011) (internal citations omitted).

Plaintiff's allegations supply such factual content. She alleges that a reporter began contacting MSP with questions in fall 2024, so awareness of her protected activity does not depend solely on the later publication date. ECF No. 5, PageID.254. She further alleges a continuing course of adverse treatment extending through 2025, including the expansion of the MCOLES background investigation beyond its stated scope and the withholding of benefits, which permits

an inference of retaliatory motive tied to her ongoing public allegations. ECF No. 5, PageID.260-61.

### C. Defendants' publication-timing argument fails.

Defendants argue that because the WLNS series was not published until July 7, 2025, and several challenged actions—including the February 13, 2025 termination—predate publication, its actions could not have constituted First Amendment retaliation. ECF No. 40, PageID.1037. But the Amended Complaint alleges that MSP was on notice of Plaintiff's speech in fall 2024, when the reporter contacted MSP. ECF. No. 5, PageID.238-54. Moreover, Count V identifies adverse actions that occurred after publication, including expansion of the MCOLES background investigation period, refusal to return Plaintiff to work, and withholding back pay. *Id.* at PageID.254-262. An act taken in retaliation for protected speech is actionable even if the same act, taken for a legitimate reason, would have been proper, and circumstantial evidence such as the timing of events may support an inference of retaliatory motive. *Josephson v. Ganzel*, 115 F.4th 771, 788-89 (6th Cir. 2024) (citation omitted). Because the pleadings place protected speech before a sequence of adverse actions, the causation inquiry is a question for the factfinder, not a basis for judgment on the pleadings.

### D. The Court must evaluate each Defendant's alleged knowledge, conduct, and retaliatory motivation.

Defendants renew their argument that this claim impermissibly attributes conduct to MSP or to individual defendants collectively. ECF No. 40, PageID.1039-40. In its March 6, 2026 Opinion and Order, this Court considered the organizational sufficiency of the First Amended Complaint, dismissed defendants against whom insufficient personal involvement was alleged, and determined that the remaining use of collective pleading did not independently require dismissal. ECF No. 21, PageID.604-06. Plaintiff relies upon that ruling for its limited holding

concerning Rule 8, not as a determination that the remaining defendants necessarily possessed knowledge of protected speech or participated in unconstitutional retaliation. Section 1983 requires a factual connection between each defendant's own conduct and the alleged constitutional violation. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019).

Plaintiff began communicating with WLNS in August 2024 and WLNS first contacted MSP with questions that fall and published in July 2025. ECF No. 5, PageID.254-55. During Plaintiff's October 2, 2024 reinstatement meeting, Buege told Plaintiff that "the reporting" had to stop, immediately before notifying her of her suspension. *Id.* at PageID.233-34. These allegations identify conduct personally attributable to Buege and provide context for Plaintiff's theory of retaliation.

The statement concerning "the reporting" does not, by itself, conclusively establish that Buege knew of Plaintiff's communications with WLNS. Likewise, the allegation that a reporter contacted MSP does not automatically establish that every remaining individual defendant knew Plaintiff was the source. Accordingly, the relevant inquiry is whether the Amended Complaint plausibly alleges that each defendant knew of Plaintiff's protected speech and participated in adverse conduct motivated, at least in part, by that speech. The Court should evaluate the pleaded chronology, each official's identified actions, and any reasonable inferences of knowledge and retaliatory motivation on a defendant-specific basis, rather than dismiss Count V solely because the pleading also employs collective references, and if it finds the allegations lacking, allow Plaintiff to amend. *Stewart v. IHT Ins. Agency Grp., LLC*, 990 F.3d 455, 457 n.1 (6th Cir. 2021) ("Dismissal with prejudice and without leave to amend is only appropriate when it is clear on de novo review that the complaint could not be saved by an amendment.").

### VI. THE INDIVIDUAL DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY.

Defendants ask the Court to cloak the individual Defendants in qualified immunity on Plaintiff's constitutional counts—substantive due process (Count III), equal protection (Count IV), and First Amendment retaliation (Count V)—at the pleading stage, before discovery. That request is premature, and, as to Counts IV and V, substantively wrong. Qualified immunity shields officials from damages only where the plaintiff fails to plead facts showing the violation of a "statutory or constitutional right" and "the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Although entitlement to qualified immunity "is a threshold question to be resolved at the earliest possible point," the Sixth Circuit has repeatedly held that such "point is usually summary judgment and not dismissal under Rule 12." *Guertin v. Mich.*, 912 F.3d 907, 917 (6th Cir. 2019) (citing *Wesley v. Campbell*, 779 F.3d 421, 433-34 (6th Cir. 2015) (cleaned up)). "Absent any factual development beyond the allegations in a complaint, a court cannot fairly determine whether a case is 'obvious' or 'squarely governed' by precedent." *Id.* (citing *Evans-Marshall*, 428 F.3d at 235 (Sutton, J., concurring) (brackets omitted)).

It is "generally inappropriate . . . to grant a [Rule 12(c) motion for judgment on the pleadings] on the basis of qualified immunity." *Moderwell v. Cuyahoga Cnty.*, 997 F.3d 653, 661 (6th Cir. 2021) (citing *Wesley*, 779 F.3d at 433). Here, the equal-protection and First Amendment claims allege violations of rights clearly established long before the challenged conduct, and Defendants' remaining objections—comparator sufficiency, decisionmaker knowledge, causation, and personal involvement—turn on disputed facts that cannot be resolved against Plaintiff on the pleadings.

**A. The qualified-immunity inquiry and the Rule 12(c) posture**

The qualified-immunity analysis proceeds in two steps: whether "the official violated a statutory or constitutional right," and whether "the right was 'clearly established' at the time of the challenged conduct." *al-Kidd*, 563 U.S. at 735 (citing *Harlow*, 457 U.S. at 818). A right is "clearly established" when its contours are "sufficiently clear that every reasonable official would understand that what he is doing" violates that right. *Dist. of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (citing *al-Kidd*, 563 U.S. at 741). This standard requires either "controlling authority" or "a robust consensus of persuasive authority" placing the question "beyond debate." *Id*. (citing *al-Kidd*, 563 U.S. at 741-42). Courts must not "define clearly established law at a high level of generality," *id.* at 63-64 (citation omitted), but they also may not demand a prior "case directly on point." *Id.* at 64 (citing *al-Kidd*, 563 U.S. at 741).

The decisive consideration here is posture. A Rule 12(c) motion is evaluated "using the same standard that applies to a review of a motion to dismiss under Rule 12(b)(6)," *Moderwell*, 997 F.3d at 659 (citations omitted), so all well-pleaded allegations must be accepted as true, and all reasonable inferences drawn in Plaintiff's favor.

Although qualified immunity may be resolved at the pleading stage, *Crawford v. Tilley* clarifies that no general presumption against dismissal applies to the constitutional-violation prong, which is governed by ordinary Rule 12(b)(6) pleading standards. 15 F.4th 752, 764 (2021). *Crawford* does not warrant dismissal here. Plaintiff's equal protection and First Amendment allegations plausibly state constitutional violations, and controlling precedent establish the rights at issue. Defendants' arguments concerning individual knowledge, motive, and participation implicate factual questions that cannot be resolved against Plaintiff on the pleadings. *See Moderwell*, 997 F.3d at 665.

**B. Count III (Substantive Due Process—Bodily Integrity)**

The "right to personal security and bodily integrity" is firmly established in the Sixth Circuit. *Guertin*, 912 F.3d at 919 (citation omitted). The Sixth Circuit has also recognized that state actors may be liable under the substantive component of the Due Process Clause for affirmative acts that create or increase the risk that an individual will be exposed to private acts of violence, and that this personal-security and bodily-integrity right was clearly established. *Lipman v. Budish*, 974 F.3d 726, 746-47 (6th Cir. 2020). That doctrine was first announced in *Kallstrom*, which held that the State may not, through its own affirmative acts, "cause or greatly increase the risk of" private violence to an identifiable individual "without due process." 136 F.3d at 1066.

The Sixth Circuit has long recognized that government officials may violate clearly established substantive due process rights when their affirmative conduct knowingly exposes an identifiable individual to serious danger. *See, e.g., Stemler v. City of Florence*, 126 F.3d 856, 870 (6th Cir. 1997) (police officers should have known under clearly established law that they could not forcibly place a woman in danger by compelling her to leave with an intoxicated, abusive boyfriend); *Nelson v. City of Madison Heights*, 845 F.3d 695, 703 (6th Cir. 2017) (a reasonable jury could find that an officer's affirmative disclosure of a confidential informant's identity increased her risk of private violence in violation of her clearly established right to personal security and bodily integrity).

Further, officials' culpable mental state presents factual questions. As noted in Section IV, *supra*, the Sixth Circuit has stressed that whether conduct was "'obvious' or 'squarely governed' by precedent" ordinarily cannot be answered without "factual development," which is why answering questions of qualified immunity on bodily-integrity claims generally should happen at "summary judgment." *Guertin*, 912 F.3d at 917 (citing *Evans-Marshall*, 428 F.3d at 235) (Sutton, J., concurring)).

### C. Count IV (Equal Protection)

Individuals have an Equal Protection Clause-protected right "to be free from discrimination on the basis of sex in public employment," and the showing required to prove such "mirrors" that for a "disparate treatment claim under Title VII." *Smith v. City of Salem*, 378 F.3d 566, 576-77 (6th Cir. 2004) (citing *Davis v. Passman*, 442 U.S. 228, 234-35 (1979)). Because that right is long settled, officials here had fair warning; no reasonable official could believe that intentionally disciplining an employee based on sex is lawful. *Poe v. Haydon*, 853 F.2d 418, 430 (6th Cir. 1988) (even before 1984, a female public employee had a clearly established constitutional right to be treated the same as men); *Gutzwiller v. Fenik*, 860 F.2d 1317, 1325 (6th Cir. 1988) (affirming liability for intentional sex discrimination in public employment and recognizing that an Equal Protection Clause showing parallels a Title VII disparate-treatment claim); *Yerkes v. Oh. St. Hwy. Patrol*, 455 F. Supp. 3d 523, 536 (S.D. Ohio 2020) (denying qualified immunity at the pleading stage because a female state trooper's right to be free from intentional sex discrimination in public employment was clearly established).

### D. Count V (First Amendment Retaliation)

As discussed *supra* in Section V.A., Plaintiff spoke to a reporter as a private citizen about corruption and cover-ups within MSP—obvious matters of public concern. That speech falls comfortably within the scope of *Ashford*. 89 F.4th at 975-76. This right has long been clearly established in the Sixth Circuit, and reasonable government officials have been on notice for decades that retaliating against public employees for speaking as private citizens on matters of public concern violates the First Amendment. *See, e.g., Chappel v. Montgomery Cnty. Fire Prot. Dist. No. 1*, 131 F.3d 564, 580 (6th Cir. 1997) (public officials are charged with knowing that employees may not be disciplined for protected speech on matters of public concern); *Hoover v. Radabaugh*, 307 F.3d 460, 469 (6th Cir. 2002) (reasonable officials would know that terminating

an employee, even in part, to silence speech about departmental illegality is unconstitutional); *See v. City of Elyria*, 502 F.3d 484, 495 (6th Cir. 2007) (the right to report possible police corruption without improper government retaliation was settled); *Buddenberg v. Weisdack*, 939 F.3d 732, 741 (6th Cir. 2019) (the right to report public corruption, unethical conduct, and sex-based discrimination without retaliation was clearly established); *DeCrane v. Eckart*, 12 F.4th 586, 600 (6th Cir. 2021) (established precedent gave reasonable officials notice that speech outside an employee's chain of command and official duties constituted private-citizen speech); *Anders v. Cuevas*, 984 F.3d 1166, 1179 (6th Cir. 2021) (a reasonable government official would have known that retaliating against an individual for reporting possible law-enforcement corruption violated the First Amendment). As discussed in Sections V.B. and D., *supra*, the Amended Complaint sufficiently pleads knowledge.

**E. Personal involvement and group pleading do not entitle the remaining Defendants to immunity.**

Qualified immunity must be evaluated separately for each individual defendant and each asserted constitutional violation. *Iqbal*, 556 U.S. at 676. The relevant inquiry is whether the well-pleaded facts plausibly establish that the official, through their own conduct, violated a constitutional right and whether the unlawfulness of that conduct was clearly established under the circumstances. *al-Kidd*, 563 U.S. at 735.

For Count IV, Plaintiff alleges intentional sex-based disparate treatment, including the decisions and investigative actions attributed to identified officials in the Amended Complaint. The constitutional inquiry concerns whether each defendant personally participated in discriminatory conduct. For Count V, First Amendment retaliation liability requires a plausible allegation that a defendant knew of Plaintiff's protected speech and engaged in adverse conduct because of that speech.

Although qualified immunity may be resolved at the pleading stage where the allegations fail to establish a violation of clearly established law, dismissal is not warranted merely because Defendants dispute reasonable factual inferences supported by adequately pleaded allegations. *See Guertin*, 912 F.3d at 917; *Moderwell*, 997 F.3d at 661. The Court should evaluate the qualified-immunity defense separately as to each remaining defendant and each constitutional claim, considering the conduct and knowledge alleged in the Amended Complaint. Here, for the reasons cited in Sections V.B. and D., *supra*, the burden is met.

## CONCLUSION

Plaintiff respectfully requests that the Court deny Defendants' Motion for Judgment on the Pleadings. Alternately, if the Court determines that any claim requires additional factual allegations, Plaintiff respectfully requests leave to amend.

Dated: November 10, 2026

Respectfully Submitted,
ABDNOUR WEIKER LLP

*/s/ Elizabeth K. Abdnour*
Elizabeth K. Abdnour (P78203)
Nicole Cote (P86815)
Mitchell D. Sickon (P82407)
Ashley Ames Dylenski (P88208)
325 E. Grand River Ave., Suite 250
East Lansing, MI 48823
517-994-1776
liz@education-rights.com
nicole@education-rights.com
mitch@education-rights.com
ashley@education-rights.com

## CERTIFICATE OF COMPLIANCE REGARDING WORD COUNT

I hereby certify that this Brief complies with the limits set forth in LCivR 7.2(b)(i). Further, based on the Word Count function of Microsoft Word for Mac version 16.114 word processing software, applied to include all include headings, footnotes, citations and quotations, but not to include the case caption, cover sheets, any table of contents, any table of authorities, the signature block, attachments, exhibits, affidavits, and other addenda, I certify that this Brief contains 10,788 words.

*/s/ Elizabeth K. Abdnour*

## CERTIFICATE OF SERVICE

I hereby certify that on November 10, 2026, I filed this document by use of this Court's ECF system, which will serve copies to the Clerk of Courts and all counsel of record.

*/s/ Elizabeth K. Abdnour*