UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

MEGAN MORYC,

Plaintiff,

v

MICHIGAN STATE POLICE, a Department of the State of Michigan; ~~JAMES F. GRADY II~~; ~~AIMEE BRIMACOMBE~~; LISA GEE-CRAM; DALE HINZ; ~~CAMERON HENKE~~; JASON NEMECEK; ~~MICHAEL DILLON~~; ~~ERIC DARLING~~; KANDYCE HERR; THOMAS DEASY; ~~MATTHEW WILLIAMS~~; NICOLE BOCK; ~~KEVIN SWEENEY~~; ~~ANDREW FIAS~~; RYAN MAKI; ~~MICHAEL STEPHENS~~; ~~CARISSA HORAN~~; BRIAN BUEGE; ~~ROBERT DAVIS~~; and ~~SCOTT ZIESMAN~~; officially and in their personal capacities,

Defendants.

No. 1:25-cv-1127

HON. ROBERT J. JONKER

MAG. PHILLIP J. GREEN

**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

---

Elizabeth K. Abdnour (P78203)
Nicole Cote (P86815)
Mitchell D. Sickon (P82407)
Ashley Ames Dylenski (P88208)
ABDNOUR WEIKER LLP
Attorneys for Plaintiff
325 E. Grand River Ave., Suite 250
East Lansing, MI 48823
517.292.0067
liz@education-rights.com
nicole@education-rights.com
mitch@education-rights.com
ashley@education-rights.com

Mary A. Waddell (P70545)
Ryan Wier (P83886)
Shelley M. McCormick (P80311)
Assistant Attorneys General
Audrey J. Forbush (P41744)
Special Assistant Attorney General
Attorneys for Defendants
MI Dep't of Attorney General
State Operations Division
P.O. Box 30754
Lansing, MI 48909
517.335.7573
waddellm1@michigan.gov
wierr2@michigan.gov
mccormicks@michigan.gov
aforbush@plunkettcooney.com

______________________________________________/

**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

Mary A. Waddell
Assistant Attorney General
Attorney for Defendants
State Operations Division
P.O. Box 30754
Lansing, MI 48909
(517) 335-7573
Waddellm1@michigan.gov
P70545

Dated: November 24, 2026

## INTRODUCTION

Plaintiff Megan Moryc's response concedes more than it contests. Moryc concedes that the decade of history in her complaint is purported background and not a basis for Title VII liability. She concedes that the allegedly retaliatory acts occurring more than 300 days before her charge "are not independently" actionable." She does not defend a special relationship theory. She concedes that the remark she attributes to Buege does not establish that he knew of her contact with WLNS, and that a reporter's call to the Michigan State Police (MSP) does not establish that any individual Defendant knew she was the source. And she does not contend that the right in Count III was clearly established.

What remains is a request that every question be deferred to discovery. But a Rule 12(c) motion tests the pleading, and the dates and events that defeat Moryc's claim come from her own complaint. For the reasons below and in Defendants' principal brief, Defendants are entitled to judgment on the pleadings.

## ARGUMENT

### I. Moryc's response confirms that her Title VII discrimination claim fails.

#### A. Count I is limited to the March 16, 2024 closure of her complaint.

Moryc now agrees that her "[h]istorical allegations provide context" and "do not transform those events into separate Title VII claims." (ECF No. 55, PageID.1129.) That concession resolves the exhaustion question. Count I is confined to the charge alleged: that on March 16, 2024, MSP closed the complaint

Moryc made on August 17, 2023 "without thoroughly addressing [her] allegations." (ECF No. 40-1, PageID.1047.)

### B. A later arbitration award did not make Moryc an employee while she was terminated.

Moryc does not dispute that MSP terminated her on August 9, 2021 and did not reemploy her until October 2, 2024. She acknowledges that she neither performed duties for MSP nor received compensation from MSP during the charge period. (ECF No. 55, PageID.1130.) She argues instead that the 2022 arbitration award had a "retrospective effect" that made her an employee after the fact. (*Id.*) Moryc cites no authority for that proposition, and *Hishon* does not supply it. As Moryc herself describes that case, Title VII's protections attach once an employment relationship is "established." (*Id.*) During the charge period, none existed. When Moryc made her August 2023 complaint, the circuit court had vacated the arbitration award, and when the complaint was closed in March 2024, MSP's application for leave to appeal remained pending. (ECF No. 5, PageID.218.) Title VII reaches discrimination "with respect to" the "terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a)(1). Whether MSP discriminated in March 2024 turns on the relationship that existed in March 2024. A later award of back pay that compensates for a period of separation. It does not convert that period into one of employment.

Moryc also contends that her status "cannot be resolved against Plaintiff on the pleadings." (ECF No. 55, PageID.1131.) But the relevant dates come from her own complaint and are undisputed. The question is one of law.

### C. Even under *Muldrow*, Moryc identifies no term or condition of employment.

Moryc contends that, after *Muldrow,* a Title VII discrimination plaintiff need not show that the harm was significant. True enough. But *Muldrow* still requires, some "disadvantageous change in an employment term or condition." *Muldrow v. City of St. Louis*, 601 U.S. 346, 354 (2024). A plaintiff must "show some harm." *Id.* at 350. Moryc's response never identifies one.

The charged act is the closure of an internal complaint about alleged assault by Moryc's "former domestic partner." (ECF No. 40-1, PageID.1047.) When that complaint was made and when it was closed, Moryc had no post, no duties, no schedule, and no pay that the closure could affect. Antcliff, moreover, had resigned from MSP two months before the closure. (ECF No. 5, PageID.230.) The disposition of an investigation into a former partner's off-duty conduct, toward a person who was not then working for MSP, is not a term, condition, or privilege of her employment.

Moryc's remaining arguments do not change that result. She invokes the perjury investigation and the Metivier complaint (ECF No. 55, PageID.1132-1133), but those matters are outside the charge and, by her own concession, are background. And her observation that a failure to investigate may be actionable when done "in retaliation or some separate protected act" (*Id.*, PageID.1133.) describes a retaliation theory. Count I is not a retaliation claim. Accordingly, MSP is entitled to a judgment on the pleadings on Count I.

## II. Moryc's Title VII retaliation claim fails.

### A. Count II is limited to the timely acts it actually pleads.

At the outset, Moryc answers an argument that MSP did not make. MSP has never contended that exhaustion is jurisdictional. A mandatory claim-processing rule is enforced when, as here, the defendant timely raises it. *Fort Bend Cty, v. Davis,* 587 U.S. 541, 550-51 (2019); *Alexander v. Univ. of Memphis*, No. 20-5426, 2021 U.S. App. LEXIS 16949, 2024 WL 2579973, at *3 (6th Cir. June 7, 2021) (citations omitted).

Regarding the argument that MSP did make, Moryc concedes the point. She acknowledges that discrete acts occurring more than 300 days before her June 12, 2025 charge "are not independently actionable." (ECF No. 55, PageID.1135.) That concession disposes of the second act listed in Count II, "[i]nitiating false and retaliatory criminal and internal investigations." (ECF No. 5, PageID.272.) Moryc's own account places the initiation of those investigations in October 2020 and September 2023. (ECF No. 5, PageID.264; ECF No. 55, PageID.1124-1125.) Moryc attempts to fill the gap by asserting that Count II "principally rests" on "the conduct of the MCOLES- related investigation" and "the second termination." (ECF No. 55, PageID.1135.) But, fatally for Moryc, neither appears among the four alleged adverse actions in either her EEOC charge or actions that Count II pleads. (ECF No. 40, PageID.1053, ECF No. 5, PageID.271-272.) A plaintiff may not amend her complaint through a brief opposing a dipositive motion. *See Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 48384 (6th Cir. 2020). Count II fails on the acts it alleges.

### B. The April 2023 report did not oppose an unlawful employment practice.

Moryc relies on *Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997), for the proposition that former employees are protected from retaliation. But *Robinson* addresses who may sue. It does not address what counts as protected opposition. The opposition clause protects a person who "has opposed any practice made an unlawful employment practice by" Title VII. 42 U.S.C. § 2000e-3(a). In April 2023, by Moryc's own description, she reported Antcliff's alleged "domestic and sexual abuse." (ECF No. 55, PageID.1124.) That is a report of violence by a live-in partner, in a relationship that continued for more than two years *after* Moryc had last worked at an MSP post. It is not a complaint that MSP engaged in an employment practice. The "key question is whether the complaint concerns conduct between an employer and its employee." *Stanley v. ExpressJet Airlines, Inc.*, 808 F. App'x 351, 357 (6th Cir. 2020). Not surprisingly, Moryc does not address *Stanley*.

### C. The remaining acts are not materially adverse.

***Back pay.***

MSP's argument is narrower that Moryc's response suggests. MSP does not contend that the Ingham County order extinguishes Count II. MSP contends that the first act listed in Count II depends on the premise that MSP is "[f]ailing to pay her back pay she is owed." (ECF No. 5, PageID.271-272.) The court supervising enforcement of the arbitration award has ordered that MSP "owes Megan Moryc nothing further," including insurance or other employment benefits." (ECF No. 40-5, PageID.1063.) Moryc does not dispute the order or its terms.

Moryc's answer is that MSPTA, and not she, was the party to that proceeding. But the complaint alleges that MSPTA grieved and litigated the award "on behalf of Tpr Moryc." (ECF No. 5, PageID.217.) And her response treats the results of that litigation as her own, stating that the circuit court "ruled in Plaintiff's favor." (ECF No. 55, PageID.1127.) Moryc cannot claim the award through MSPTA and disclaim the order declaring that award satisfied. Simply stated, declining to pay a sum that a court has held is not owed would not dissuade a reasonable worker from making a charge of discrimination.

***Return to work.***

Moryc does not dispute that she is unlicensed, and she does not dispute that the MCOLES act bars an unlicensed person from serving as a law enforcement officer. *Michael* and *Ahmed*, as Moryc describes them, involved employers that chose to keep an employee on leave. (ECF No. 55, PageID.1137.) Neither involved an employee whom state law prohibited the employer from returning to duty.

Moryc responds that whether licensure "genuinely compelled" MSP's action is a question of fact. (*Id.*, PageID.1140.) Not so. The facts are in her complaint. She acknowledges her license lapsed in August 2023.[1] (ECF No. 5, PageID.238.) The circuit court conditioned her continued employment on MCOLES licensure, and the second arbitrator ordered reinstatement subject to the same condition. (*Id.*, PageID.242-243, ECF No. 5-5, PageID.329.) Her proposed comparator, by her own

---

[1] This date is inaccurate. Moryc's license lapsed on or about October 19, 2022, but MSP accepts this allegation as true for purposes of this Motion. (ECF No. 5, PageID.303.); Mich. Comp. Laws. § 28.609(11).

allegation, "had never been removed from MSP's payroll." (ECF No. 5, PageID.242.) He was not a member returning after a three-year separation.

***Statements in litigation***

*Giatta* and *Cruz*, as Moryc describes them, involved an employer that filed a counterclaim or a lawsuit against a former employee. (ECF No. 55, PageID.1138.) Count II alleges something different: statements made by MSP in the course of pending litigation. Moreover, the court that heard the statements upheld the arbitration award in favor of Moryc. (ECF No. 5, PageID.241.) Moryc cites no authority holding that an argument made to a court that then ruled for the employee's side is a materially adverse action.

**D. Moryc's own allegations defeat the causal inference.**

Moryc contends that she has pleaded more than temporal proximity, pointing to her October 2024 suspension, her February 2025 termination, and the scope of her background investigation. (ECF No. 55, PageID.1141.) The latter two, again, are not among the acts Count II pleads.

As to the suspension, the complaint supplies the reason. Moryc alleges Buege told her the suspension "was due to the perjury investigation that had been opened against Tpr Moryc a year prior." (ECF No. 5, PageID.234.) By Moryc's own account, that investigation began in September 2023 because of the allegation from Antcliff's former wife. (ECF No. 55, PageID.1125.) The investigation therefore originated with a person outside MSP, and it predated Moryc's April 2024 civil rights charge. An employer's "proceeding along lines previously contemplated" is "no evidence whatever of causality." *Clark Cnty Sch. Dist. v. Breedon*, 532 U.S. 268,

272 (2001). And where the complaint itself pleads an "obvious alternative explanation" for the challenged act, the inference of retaliation is not plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567 (2007)).

Moryc's reliance on Buege's alleged remark that "the reporting" had to stop does not alter the analysis. The complaint does not allege what Buege meant. It offers only Moryc's self-serving characterization of the remark as "an apparent admission." (ECF No. 5, PageID.234.) And the suspension was imposed by a letter from MSP's human resources director, not Buege. (*Id.)* Thus, MSP is entitled to judgment on the pleadings on Count II.

## III. Moryc's substantive due process claim fails.

### A. Moryc alleges no affirmative act by any individual Defendant.

Recognizing that there was none, Moryc's response does not address the special-relationship exception. Instead, she tries to resurrect her state-created danger theory that this Court already rejected. (ECF No. 55, PageID.1144.) Even if it had not already been dismissed by the Court, the state-created danger theory requires an affirmative act by the defendant that created or increased the risk of private violence. *Lipman v. Budish*, 974 F.3d 726, 744 (6th Cir. 2020.) A "failure to act is not an affirmative act under the state-created danger theory." *Cartwright v. City of Marine City,* 336 F.3d 487, 493 (6th Cir. 2003.)

The only affirmative act that Moryc alleges is the 2016 assignment of Antcliff as her field training officer. The complaint attributes that decision to "MSP." (ECF No. 5, PageID.215.) This Court has already found that Moryc "makes no allegations

that suggest Captain Hinz was involved in that decision." (ECF No. 21, PageID.607.) Moryc's response identifies no allegation that Gee-Cram, Nemecek, Herr, Deady, Bock, Maki, or Buege made or participated in that assignment either. Instead, Moryc argues that Count III is "broader" than the dismissed Count VI because it also reaches Defendants' purported "failure to respond" to reports and a "policy" of inadequate response. (ECF No. 55, PageID.1145.)

That breadth is the problem. A failure to respond is inaction, and under *DeShaney* and *Cartwright* inaction does not violate the Due Process Clause. What is more, the investigations Moryc criticizes followed her April 9, 2023 report, which she made after the relationship and alleged abuse had ended. (ECF No. 5, PageID.222-224.) An investigation that begins *after* the alleged harm has occurred cannot have created or increased the risk of that harm.

**B. The claim is also untimely.**

Moryc argues that she did not learn until 2024 and 2025 that MSP "knowingly" assigned her to Antcliff. (ECF No. 55, PageID.1143.) But a claim accrues when the plaintiff knows or has reason to know of her injury. *Sevier v. Turner* 742 F.2d 262, 273 (6th Cir. 1984.) Moryc knew of the assignment in 2016, and she alleges abuse beginning in 2021 (ECF No. 5, PageID.222.) What she claims to have learned later is evidence of what MSP allegedly knew—that Antcliff had a reputation as a "womanizer." (ECF No. 5-5, PageID.323.) But MSP is not a

Defendant in Count III, and discovery of the *injury* starts the limitation period.[2] *Rotella v. Wood*, 528 U.S. 549, 555 (2000). Moryc's fallback position, that the post-April 2020 investigations fall within the limitations period, fails on the merits for the reasons stated above.

Consequently, the individual Defendants are entitled to judgment on the pleadings on Count III.

## IV. Moryc's equal protection claim fails.

### A. Later discovery of an alleged motive does not delay accrual.

Moryc does not dispute that she was investigated in October 2020 and terminated on August 9, 2021. She argues that she did not learn the complaint against her was retaliatory until November 2021. (ECF No. 55, PageID.1146.) But the limitations period begins when a plaintiff learns of the employment decision itself, not when she learns the motive she attributes to it. *Amini v. Oberlin Coll*, 259 F.3d 493, 499 (6th Cir. 2001). Moryc's own response, moreover, relies on the February 2022 arbitration decision that referred to the "disparate use of progressive discipline." (ECF No. 55, PageID.1147; ECF No. 5, PageID.217.) That decision issued three years before she filed suit.

---

[2] Even if MSP's knowledge were relevant to the inquiry, Moryc concedes that she learned of Antcliff's alleged reputation as a "womanizer" when her former attorney obtained public records in response to a Freedom of Information Act (FOIA) request. (ECF No. 5, PageID.263.) In other words, the information was a public record and Moryc could have reasonably discovered the information prior to the expiration of the statute of limitations.

**B. The Court's Rule 8 ruling did not decide plausibility.**

Moryc contends that the law-of-the-case doctrine bars the Defendants' arguments that Count IV fails to tie any Defendant to an act of intentional discrimination. It does not. The Court's March 6, 2026 opinion addressed a challenge arising "not under Rule 12, but rather under Rule 8." (ECF No. 55, PageID.1152-1153.) Whether the complaint states a plausible equal protection claim against each individual Defendant has not been decided.

**C. Mory identifies no comparator tied to any individual Defendant.**

In an effort to overcome her time-barred equal protection claim, Moryc contends that it is premised on Herr's alleged failure to investigate the April 2023 report of Antcliff's alleged abuse and on a trooper who was permitted to work while unlicensed. (ECF No. 55, PageID.1147-1148.) But Moryc does not allege that Herr, or any other individual Defendant, handled a man's report of domestic abuse differently. And she does not allege who decided that the other trooper could work. That trooper, again, "had never been removed from MSP's payroll." (ECF No. 5, PageID.242.)

Moryc's own summary is telling. She asks the Court to deny the motion "to the extent" her allegations "plausibly establish each defendant's personal participation." (ECF No. 55, PageID.1149.) That states the question, it does not answer it. As such, the individual Defendants are entitled to judgment on the pleadings on Count IV.

## V. Moryc's First Amendment retaliation claim fails.

Much of Moryc's response is devoted to showing that her statements to WLNS were protected speech. For purposes of this motion, Defendants did not contest that point. The issue is whether Moryc has plausibly alleged that any individual Defendant knew of that speech and acted because of it.

On that issue, Moryc's response concedes the deficiency. She acknowledges that Buege's alleged remark "does not, by itself, conclusively establish that Buege knew of Plaintiff's communications with WLNS." (ECF No. 55, PageID.1153.) She further acknowledges that a reporter's contact with MSP does not establish that every individual Defendant "knew that Plaintiff was the source." (*Id.*) Those are the only two allegations of knowledge that she identifies.

Neither supports the inference. The complaint itself defines "the reporting" as Moryc's "reports of domestic and sexual assault, discrimination, harassment, and retaliation." (ECF No. 5, PageID.234.) Those are her internal reports, not her contact with the press. And the complaint does not allege when in "fall 2024" the reporter allegedly contacted MSP, whom he contacted, or that he identified Moryc. (*Id.*, PageID.254.)

Moryc also points to acts that followed the July 7, 2025 publication. (ECF No. 55, PageID.1152.) But the back-pay dispute and the alleged refusal to return her to work both predated publication. (ECF No. 5, PageID.233-234, 253.) Conduct that came before the alleged protected activity cannot have been the but-for cause of it. *See Nieves v. Bartlett*, 587 U.S. 391 (2019) (reaffirming but-for causation requirement.) The background investigation, for its part, was conducted by an

investigator who is not a defendant, and Moryc does not allege that any individual Defendant directed that investigator's questions. (ECF No. 5, PageID.256-257, 260-261.)

Therefore, the individual Defendants are entitled to judgment on the pleadings.

## VI. The individual Defendants are entitled to qualified immunity.

Moryc argues that qualified immunity is premature. But as Moryc acknowledges, under *Crawford v. Tilley* "no general presumption against dismissal applies to the constitutional-violation prong," which is governed by ordinary pleading standards. (ECF No. 55, PageID.1155.) For the reasons stated above, Moryc has not pleaded a constitutional violation by any individual Defendant. That alone resolves the immunity question.

Moryc also fails to carry her burden on the second prong. As to Count III, she does not contend that the right was clearly established. She asserts that only "the equal-protection and First Amendment claims allege violations of rights clearly established." (ECF No. 55, PageID.1154.) The decisions she does cite, as she describes them, involved officers who forcibly placed a woman with an abusive boyfriend or who disclosed an informant's identity. (*Id.*, PageID.1156.) Those are affirmative acts. Moryc cites no case holding that an inadequate response to a report of abuse by a domestic partner, made after the abuse had ended, violates the Due Process Clause.

As to Counts IV and V, Moryc defines the rights at the highest level of generality: the right to be free of sex discrimination in public employment, and the

right to speak on matters of public concern without retaliation. The Supreme Court has instructed courts "not to define clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). The relevant question is whether every reasonable official in each Defendant's position would have understood that the particular conduct alleged against him or her was unlawful. Moryc's response never matches a precedent to a Defendant.

In short, Gee-Cram, Hinz, Nemecek, Herr, Deasy, Bock, Maki, and Buege are entitled to qualified immunity on Counts III, IV, and V.

**VII. Moryc's alternative request for leave to amend should be denied.**

In the final sentence of her response, Moryc requests leave to amend. (ECF No. 55, PageID.1159.) A request for leave to amend made in a brief opposing a dispositive motion is not a motion to amend. *La. Sch. Emps' Ret Sys. v. Ernst & Young, LLP,* 622 F.3d 471, 486 (6th Cir. 2010). Moryc has already amended her complaint once. She has had the benefit of two motions to dismiss and of this Court's March 6, 2026 opinion, which identified the personal-involvement defects in her pleading. And she identifies no fact she would add.

## CONCLUSION AND RELIEF REQUESTED

For the reasons stated above and in their principal brief, Defendants MSP, Gee-Cram, Hinz, Nemecek, Herr, Deasy, Bock, Maki, and Buege respectfully request that this Court (1) grant their motion for judgment on the pleadings, (2) grant qualified immunity to the individual Defendants, (3) dismiss all Moryc's claims with prejudice, and (4) grant any other appropriate relief.

Respectfully submitted,

/s/ *Mary A. Waddell*
Mary A. Waddell
Assistant Attorney General
Attorney for Defendants
State Operations Division
P.O. Box 30754
Lansing, MI 48909
(517) 335-7573
waddellm1@michigan.gov
P70545

Dated: November 24, 2026

## CERTIFICATE OF SERVICE

I certify that on November 24, 2026, I electronically filed the foregoing papers with the Clerk of the Court using the ECF system, which will provide electronic copies to counsel of record, and I certify that my secretary has mailed by U.S. Postal Service the papers to any non-ECF participant.

/s/ *Mary A. Waddell*
Mary A. Waddell
Assistant Attorney General
Attorney for Defendants
State Operations Division

2025-0444648-A